# EXHIBIT A



CORPORATION SERVICE COMPANY®

# Notice of Service of Process

S1C / ALL
Transmittal Number: 16372681
Date Processed: 03/15/2017

| Primary Contact: | WF West - WF Bank |
| --- | --- |
| | Corporation Service Company- Wilmington, DELAWARE |
| | 2711 Centerville Road |
| | Wilmington, DE 19808 |

| Entity: | Wells Fargo Bank, National Association |
| --- | --- |
| | Entity ID Number  2013649 |
| Entity Served: | Wells Fargo Bank, N.A. |
| Title of Action: | Vana Fowler vs. Wells Fargo Bank, N.A. |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Contract |
| Court/Agency: | San Francisco City and County Superior Court, California |
| Case/Reference No: | CGC 17-557482 |
| Jurisdiction Served: | California |
| Date Served on CSC: | 03/15/2017 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Michael F. Ram |
| | 415-433-4949 |
| Client Requested Information: | Matter Management User Groups: [Service of Process] |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882  |  sop@cscglobal.com

**SUMMONS**
*(CITATION JUDICIAL)*

SUM-100

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
WELLS FARGO BANK, N.A.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
VANA FOWLER, individually and on behalf of all others similarly situated

**By Fax**

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case. ¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.

Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.

Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco County Superior Court
400 McAllister St.
San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):*
CGC 17-557482

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Michael F. Ram, 101 Montgomery St., #1800, San Francisco, CA 94104 (415) 433-4949

DATE: MAR 09 2017    CLERK OF THE COURT, by                    , Deputy
*(Fecha)*              *(Secretario)*      ERNESTA NAVARRO, Rosel   *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

NOTICE TO THE PERSON SERVED: You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☑ on behalf of (specify): WELLS FARGO BANK, N.A.
   under: ☑ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
         ☐ other (specify):
4. ☐ by personal delivery on (date):

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

SUMMONS

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CM-010

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
Michael F. Ram, SBN 104805; Susan S. Brown, SBN 287986
Ram, Olson, Cereghino & Kopczynski LLP
101 Montgomery Street, Suite 1800
San Francisco, CA 94104
TELEPHONE NO.: 415-433-4949   FAX NO.: 415-520-0308
ATTORNEY FOR (Name): Vann Fowler et al.

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Francisco
STREET ADDRESS: 400 McAllister St.
MAILING ADDRESS:
CITY AND ZIP CODE: San Francisco, CA 94102
BRANCH NAME: Civil

**F I L E D**
San Francisco County Superior Court

MAR 09 2017

CLERK OF THE COURT
BY: _____
Deputy Clerk

CASE NAME:
Fowler et al. v. Wells Fargo Bank, N.A.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| ☑ Unlimited (Amount demanded exceeds $25,000) ☐ Limited (Amount demanded is $25,000 or less) | ☐ Counter  ☐ Joinder  Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | CGC 17-557482 |

Items 1–6 below must be completed (see instructions on page 2).

**1.** Check one box below for the case type that best describes this case:

Auto Tort
☐ Auto (22)
☐ Uninsured motorist (46)

Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☐ Other PI/PD/WD (23)

Non-PI/PD/WD (Other) Tort
☑ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)

Employment
☐ Wrongful termination (36)
☐ Other employment (15)

Contract
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)

Real Property
☐ Eminent domain/inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)

Unlawful Detainer
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)

Judicial Review
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

Enforcement of Judgment
☐ Enforcement of judgment (20)

Miscellaneous Civil Complaint
☐ RICO (27)
☐ Other complaint (not specified above) (42)

Miscellaneous Civil Petition
☐ Partnership and corporate governance (21)
☐ Other petition (not specified above) (43)

**2.** This case ☑ is  ☐ is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. ☐ Large number of separately represented parties
b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
c. ☑ Substantial amount of documentary evidence
d. ☑ Large number of witnesses
e. ☑ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
f. ☐ Substantial postjudgment judicial supervision

**3.** Remedies sought (check all that apply): a. ☑ monetary  b. ☑ nonmonetary; declaratory or injunctive relief  c. ☐ punitive
**4.** Number of causes of action (specify):  One: Violation of California Business and Professions Code §17200
**5.** This case ☑ is  ☐ is not  a class action suit.
**6.** If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: March 9, 2017

Michael F. Ram
(TYPE OR PRINT NAME)                        ▶ _Michael F. Ram_
                                            (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov

By Fax

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/Wrongful Death
Product Liability (not asbestos or toxic/environmental) (24)
Medical Malpractice (45)
  Medical Malpractice—Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (not civil harassment) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice (not medical or legal)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction)
  Contract/Warranty Breach—Seller Plaintiff (not fraud or negligence)
  Negligent Breach of Contract/Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book account) (09)
  Collection Case—Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage (not provisionally complex) (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property (not eminent domain, landlord/tenant, or foreclosure)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ—Administrative Mandamus
  Writ—Mandamus on Limited Court Case Matter
  Writ—Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal—Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (arising from provisionally complex case type listed above) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment (non-domestic relations)
  Sister State Judgment
  Administrative Agency Award (not unpaid taxes)
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (not specified above) (42)
  Declaratory Relief Only
  Injunctive Relief Only (non-harassment)
  Mechanics Lien
  Other Commercial Complaint Case (non-tort/non-complex)
  Other Civil Complaint (non-tort/non-complex)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (not specified above) (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

CASE NUMBER: CGC-17-557482 VANA FOWLER VS. WELLS FARGO BANK N.A

## <u>NOTICE TO PLAINTIFF</u>

A Case Management Conference is set for:

| | |
|---|---|
| **DATE:** | **AUG-09-2017** |
| **TIME:** | **10:30AM** |
| **PLACE:** | **Department 610** |
| | **400 McAllister Street** |
| | **San Francisco, CA  94102-3680** |

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.  **This case is eligible for electronic filing and service per Local Rule 2.11. For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

## <u>ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS</u>

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400 McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3869

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

**By Fax**

1    Michael F. Ram (SBN 104805)
     mram@rocklawcal.com
2    Susan S. Brown (SBN #287986)
     sbrown@rocklawcal.com
3    RAM, OLSON, CEREGHINO
     & KOPCZYNSKI LLP
4    101 Montgomery Street, Suite 1800
     San Francisco, California 94104
5    Telephone: (415) 433-4949
     Facsimile: (415) 433-7311
6

7    Kevin E. Epps *[To Be Admitted Pro Hac Vice]*
     kevin@ehdhlaw.com
8    Adam L. Hoipkemier *[To Be Admitted Pro Hac Vice]*
     adam@ehdhlaw.com
9    EPPS, HOLLOWAY, DELOACH &
     HOIPKEMIER, LLC
10    1220 Langford Drive, Bldg. 200
     Watkinsville, GA 30677
11

12    *Attorneys for Plaintiff and Proposed Class*

13

                SUPERIOR COURT OF CALIFORNIA

15                 CITY AND COUNTY OF SAN FRANCISCO

16                            Case No.: **CGC 17-557482**

17    VANA FOWLER, individually and on behalf of
     all others similarly situated,
18                         **CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW – UNLAWFUL AND UNFAIR BUSINESS PRACTICE**
19             Plaintiff,

20    v.

21    WELLS FARGO BANK, N.A.,              **CLASS ACTION**

22                 Defendant.

23

24

25

26

27

28

     CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW –
               UNLAWFUL AND UNFAIR BUSINESS PRACTICE

**F I L E D**
San Francisco County Superior Court

MAR 09 2017

CLERK OF THE COURT
BY: _____
            Deputy Clerk

# TABLE OF CONTENTS

Summary ......................................................................................................... 1

Parties ........................................................................................................... 2

Jurisdiction .................................................................................................... 2

Fact Allegations ............................................................................................. 3

    A.   Borrowers Pay for and the FHA Supplies Mortgage Insurance To Lenders. .......... 3

    B.   The FHA Prohibits Lenders from Collecting Post-Payment Interest on FHA-Insured Loans, Unless They First Provide A FHA-Approved Disclosure Form. ..................................................................................... 3

    C.   Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans. .................................................................................. 8

    D.   Wells Fargo Did Not Provide An FHA-Approved Form To Plaintiff Before Collecting Post-Payment Interest. ................................................. 10

Class Action Allegations ............................................................................... 13

FIRST CAUSE OF ACTION ......................................................................... 15

(Violation of California Unfair Competition Law – Unlawful and Unfair Business Practice) ....................................................................................................... 15

Relief Requested ........................................................................................... 16

### Summary

1. Defendant Wells Fargo Bank, N.A. has a systematic practice of collecting "post-payment" interest on loans insured by the Federal Housing Administration without first complying with the uniform provisions of the promissory notes and the regulations governing these loans. As a result, Wells Fargo has collected tens of millions of dollars in post-payment interest from Californians in an unlawful and unfair manner, and through this class action, Plaintiff seeks to recover restitution for those Class members injured by Wells Fargo and injunctive relief barring this wrongful conduct in the future.

2. Post-payment interest refers to interest that a lender collects after the borrower has paid the full unpaid principal of the loan. For example, if a borrower pays off the loan in full on August 5, and the lender continues collecting interest for the remainder of August, the interest collected after August 5 is post-payment interest.

3. A promissory note governs the contractual relationship between borrowers and lenders, and lenders issuing FHA-insured loans must include certain uniform provisions in the notes for these loans. Among other things, the uniform provisions provide that the lender may collect post-payment interest for the remainder of the month in which full payment is made, but only "to the extent . . . permitted by [FHA] regulations." Multistate – FHA Fixed Rate Note, USFHA.NTE, attached as Exhibit 1, at 2.

4. HUD regulations prohibit lenders from collecting post-payment interest unless two strict conditions are met: (a) the borrower makes payment of the full unpaid principal on a day "other than [the first of the month]" and (b) the lender must provide the borrower with "a form approved by the [FHA]." 24 C.F.R. § 203.558 (c) (2014) (emphasis added).

5. HUD requires use of its approved form because the form explains to borrowers, at the appropriate time, that the lender is seeking to collect post-payment interest, the terms under which the lender can collect post-payment interest, and how they can avoid such charges. *See* HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5 Appendix 8 (C).

6. Although the uniform provisions of the note, HUD handbooks, and HUD regulations prohibit lenders from collecting post-payment interest unless they provide borrowers with a HUD-approved form, Wells Fargo does not use the approved form attached to HUD Handbook 4330.1 or the "Payoff Procedure Disclosure Form" hyperlinked in HUD Handbook

4000.1.  Instead, Wells Fargo uses its own unauthorized form, which is not approved by HUD and does not fairly disclose the terms under which Wells Fargo can collect post-payment interest or properly explain how borrowers can avoid such charges.

7.      Because Wells Fargo does not use a HUD-approved form as required by both the uniform provisions of the note, the HUD Handbooks and HUD regulations, Wells Fargo has no right to collect post-payment interest from borrowers.  Yet, Wells Fargo has unlawfully collected tens of millions of dollars in post-payment interest from Plaintiff and the class of Californian borrowers of FHA-insured loans.  Through this class action, Plaintiff seeks to recover restitution for herself and Class members.

### Parties

8.      Plaintiff Vana Fowler is a citizen of California, residing in Victorville, California. In November 2013, Fowler paid off an FHA-insured loan held by Defendant Wells Fargo Bank, N.A.

9.      Defendant Wells Fargo Bank, N.A. is a national banking association.  Wells Fargo held FHA-insured loans for Plaintiff and other Class members.  These loans have been paid off in full.

10.     Wells Fargo's Articles of Association state that its main office shall be in Sioux Falls, South Dakota.  Thus, Wells Fargo is a citizen of South Dakota. *See* 28 U.S.C. § 1348.

### Jurisdiction

11.     This Court has subject matter jurisdiction over this class action.  Fowler is a citizen of a State different from Wells Fargo, and so are many other Class members. *See* 28 U.S.C. § 1332 (d)(2).  And the claims of the Class in the aggregate exceed the minimally required amount in controversy. *See* 28 U.S.C. § 1332 (d)(6).  In fact, the amount in controversy involves tens of millions of dollars.

12.     This Court has personal jurisdiction over Wells Fargo.  Among other things, Wells Fargo is registered to and does conduct business in California, holds mortgages on real property in California, has breached contracts with persons located in California, has caused injuries in California, and generally engages in substantial activity in California.

13.     This Court is also a proper venue for this action.  Wells Fargo is subject to personal jurisdiction in the Northern District of California, which "[f]or purposes of venue," means that Wells Fargo resides in this judicial district. 28 U.S.C. § 1391 (b)(1), (c).

CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW –
UNLAWFUL AND UNFAIR BUSINESS PRACTICE
Page 2 of 17

**Fact Allegations**

A.     **Borrowers Pay for and the FHA Supplies Mortgage Insurance To Lenders.**

14.     The Department of Housing and Urban Development is a department within the executive branch of the United States government.   HUD was established in 1965 by the Department of Housing and Urban Development Act.   *See* 42 U.S.C. § 3532.   The Federal Housing Administration was established in 1934 by the National Housing Act of 1934.   *See* 12 U.S.C. § 1701.   When HUD was created, Congress re-organized the FHA as an agency within HUD.

15.     Among other things, the FHA provides mortgage insurance to FHA-approved lenders for loans on single-family homes.   *See* U.S. Dep't of Housing and Urban Devt., http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory.   The FHA is the largest insurer of mortgages in the world, currently insuring approximately 4.8 million single family homes.   *Id.*

16.     Mortgage insurance protects lenders against losses that are caused by borrower defaults.   The lenders bear less risk on FHA-insured loans because the FHA will pay lenders in the event of a borrower default.   *Id.*   In exchange for FHA mortgage insurance, borrowers pay an upfront mortgage insurance premium and also make monthly premium payments.

17.     To be eligible to receive FHA mortgage insurance, lenders must be pre-approved by the FHA.   Lenders must also comply with FHA regulations, including but not limited to the regulations contained in Title 24, Subtitle B, Chapter II, Subpart B, Part 203 of the Code of Federal Regulations.   Among other things, FHA regulations require that, for any FHA-insured loan, the lender must include certain uniform provisions in every promissory note.   As a result, each of the approximately 4.8 million FHA-insured loans is documented by a promissory note containing certain uniform provisions.

B.     **The FHA Prohibits Lenders from Collecting Post-Payment Interest on FHA-Insured Loans, Unless They First Provide A FHA-Approved Disclosure Form.**

18.     One uniform provision lenders must include in the promissory note for every FHA-insured loan addresses the borrower's promise to pay interest for unpaid principal:

2.     BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of _____ Dollars (U.S. $ _____ ), plus interest, to the order of Lender.   Interest will be charged on unpaid principal, from the date of

1   disbursement of the loan proceeds by Lender, at the rate of _____ percent
2   ( _____ %) per year until the full amount of the principal has been
    paid.

3   Multistate – FHA Fixed Rate Note, USFHA.NTE at 1 (emphasis added).

4        19.    Under this provision, the borrower agrees to pay interest only on the unpaid
5   principal, and once the borrower pays the full unpaid principal, interest no longer accrues. This
6   makes sense because, by definition, interest is calculated from the amount of the outstanding
    principal loaned by the lender to the borrower.

7        20.    In fact, when lenders issue loans backed by Fannie Mae, Freddie Mac, and the
8   Veterans Administration, interest charges stop on the day the borrower pays the full unpaid
9   principal of the loan, and the lender cannot collect any post-payment interest.

10       21.    However, for nearly thirty years, the FHA maintained a policy different from the
11  other government agencies. For mortgages insured by the FHA on or after August 2, 1985 and
12  through January 20, 2015, the FHA allows lenders, subject to strict limitations, to collect interest
13  even after the borrower has paid the full amount of the unpaid principal.

14       22.    This type of interest is often referred to as "post-payment" interest. Post-payment
15  interest is interest that a lender collects even after the borrower has paid the full unpaid principal.
16  It is also considered a "penalty" because, at that point, the borrower owes the lender nothing; the
17  full unpaid principal has been paid, and the lender has all the money it was owed. The lender is
    penalizing the borrower for paying the loan before the maturity date.

18       23.    Although HUD permits lenders to collect post-payment interest, it has imposed
19  strict limitations on the lender's ability to do so. HUD prohibits lenders from collecting post-
20  payment interest unless the lender complies with HUD regulations. And HUD regulations
    require the lender to provide the borrower with a disclosure form approved by HUD.

21       24.    The limitations on post-payment interest are reflected in a uniform provision of
22  the note, which again must be included in the note for every FHA-insured loan:

23       5.     BORROWER'S RIGHT TO PREPAY

24            Borrower has the right to pay the debt evidenced by this Note, in whole
25       or in part, without charge or penalty, on the first day of any month. Lender
         shall accept prepayment on other days provided that Borrower pays interest on
26       the amount prepaid for the remainder of the month to the extent required by
         Lender and permitted by regulations of the Secretary. If Borrower makes a
27       partial prepayment, there will be no changes in the due date or in the amount of

28

the monthly payment unless Lender agrees in writing to those changes.

Multistate – FHA Fixed Rate Note, USFHA.NTE (emphasis altered) at 2.[1]

25.     Under this provision, the borrower has the right to prepay the full unpaid principal without charge or penalty on the first of the month.  The borrower also has the right to prepay the full unpaid principal on days other than the first; provided however that, in such cases, the lender can collect post-payment interest for the remainder of that month if the lender complies with FHA regulations.

26.     The relevant FHA regulation is titled "Handling Prepayments" and provides that:

(a) Notwithstanding the terms of the mortgage, the [lender] may accept a prepayment at any time and in any amount.  Except as set out below, monthly interest on the debt must be calculated on the actual unpaid principal balance of the loan.

. . .

(c) If the prepayment is offered on other than an installment due date [the first of the month], the [lender] may refuse to accept the prepayment until the next installment due date (the first day of the month), or may require payment of interest to that date, but only if the [lender] so advises the [borrower], in a form approved by the Commissioner, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment.

. . .

(e) If the [lender] fails to meet the full disclosure requirements of paragraphs (b) and (c) of this section, the [lender] may be subject to forfeiture of that portion of interest collected for the period beyond the date that prepayment in full was received and to such other actions as are provided in part 25 of this title.

24 C.F.R. § 203.558 (2014) (emphasis added).

27.     Under this regulation, if payment of the full unpaid principal is made on a day other than the first of the month, and the lender provides the borrower the FHA-approved form, then, and only then, can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

28.     For the convenience of lenders, for mortgages insured on or after August 2, 1985 and through January 20, 2015, HUD provided an approved form as Appendix 8 (C) to the HUD

---

[1] Plaintiff's note is a fixed rate note, and for FHA fixed rate notes, the uniform provision regarding the borrower's right to prepay is located at section 5.  For FHA adjustable rate notes, the same uniform provision regarding the borrower's right to prepay is located at section 6. There is no difference in the relevant language.

Housing Handbook:

**MORTGAGEE NOTICE TO MORTGAGOR**
(In response to prepayment inquiry, request for payoff or tender of prepayment in full)

Mortgagor: _____     Date: _____
Address: _____     Loan #: _____
_____     FHA#: _____

     This is in reply to your _____(date)_____ inquiry/request for payoff figures or offer to tender an amount to prepay in full your FHA-insured mortgage which this company is servicing.

     This notice is to advise you of the procedure which will be followed to accomplish a full prepayment of your mortgage.

     The _____(mortgagee name)_____ will:

(a)    [ ]    accept the full prepayment amount whenever it is paid and collect interest only to the date of that payment; or

(b)    [ ]    only accept the prepayment on the first day of any month during the mortgage term; or accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received[.]

_____

     NOTE: It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month.

     If you have any questions regarding this notice, please contact ____(name and/or department)___ at ___(telephone number)___.

_____
Mortgagee

Attachment (Pay off Statement)

HUD Housing Handbook, 4330.1 REV-5 Appendix 8 (C) at 1-2.

29. As HUD explains, "[t]he basic disclosure language is necessary because it pertains to the [borrower's] rights under the mortgage." HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5, Chapter 5-1 (C), at 2 (emphasis added).

30. HUD also confirms that the lender "must disclose the procedures that must be followed with respect to the payoff and must explain how the amount of the prepayment has been determined. Otherwise, the [lender] must forfeit any interest collected after the date of prepayment." *Id.* at 6. (emphasis added)

31. In May 2016, HUD Handbook 4000.1 went into effect, and reiterates the requirement that lenders must provide borrowers with an approved disclosure as a condition to charging post-payment interest.

32. For example, Handbook 4000.1 states that, "[w]hen notified of the Borrower's intent to prepay a Mortgage, the Mortgagee must send to the Borrower directly the Payoff Disclosure and copy of the payoff statement." The handbook also states "this option [*i.e.*, post-payment interest] may only be used if the Mortgagee has provided the Payoff Disclosure to the Borrower."

33. The Payoff Procedure Disclosure Form is found on HUD's forms webpage which is hyperlinked in the handbook.

34. Likewise, a Frequently Asked Questions page linked from and accessible through the HUD website contains the question "Is there a current Payoff Procedure Disclosure for FHA Loans?"

35. The answer to the FAQ is: "Yes, in response to a prepayment inquiry, request for payoff, or tender of prepayment in full, mortgagees must use the Payoff Procedure Disclosure notice provided on the Single Family Mortgages Model Documents webpage at: https://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/model_documents The specific link is at: https://portal.hud.gov/hudportal/documents/huddoc?id=SFPayoffProcDisc.pdf"

36. In sum, pursuant to the uniform provisions of the note, HUD Handbooks, and HUD regulations, lenders cannot collect post-payment interest on FHA-insured loans unless (a) the borrower pays the full unpaid principal on a day other than the first of the month and (b) the lender has provided the borrower the FHA-approved form. If the lender satisfies both of those requirements, only then can the lender collect post-payment interest for the remainder of the

1  month in which payment of the full unpaid principal was made.

2  **C.      Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans.**

3        37.    From August 2, 1985 through January 20, 2015, lenders including Wells Fargo

4  have collected billions of dollars in post-payment interest.

5        38.    The National Association of Realtors estimates that "more than 40 percent of

6  FHA borrowers close during the first 10 days of the month, exposing them to at least 20 days of

7  interest payments."  Kenneth R. Harney, *Interest Costs Don't End With Payoff Of FHA Loan*,

8  Chicago   Tribune,   Apr.   11,   2004,   http://articles.chicagotribune.com/2004-04-

   11/business/0404110057_1_fha-loan-ginnie-mae-fha-borrowers.   The NAR further "estimate[s]

9  that during 2003, . . . FHA customers who terminated their loans paid an average of $528 in

10  'excess interest fees,' a cumulative 'prepayment penalty' to those borrowers of $587 million."

11  *Id.* (emphasis added).

12        39.    "HUD doesn't get the interest, lenders do.  In effect, lenders are getting interest

13  for money that isn't outstanding.  This may not sound like a big deal, but according to HUD,

14  such post-payment interest charges cost borrowers $449 million in 2012."  Peter Millar, *The*

15  *Very New Deal: How FHA Mortgages Are Changing For 2015*, The Simple Dollar, Jan. 9, 2015,

16  http://www.thesimpledollar.com/the-very-new-deal-how-fha-mortgages-are-changing-in-2015/
   (emphasis added).

17        40.    "This practice . . . has cost consumers staggering amounts, with estimates ranging

18  into the hundreds of millions of dollars a year during periods when mortgage rates were high."

19  Kenneth R. Harney, *FHA Will Stop Lenders From Charging Extra Interest When Homeowners*

20  *Sell   or   Refinance*,   Washington   Post,   Sep.   5,   2014,

21  https://www.washingtonpost.com/realestate/fha-will-stop-lenders-from-charging-extra-interest-

   when-homeowners-sell-or-refinance/2014/09/04/478a2a04-32a6-11e4-8f02-

22  03c644b2d7d0_story.html (emphasis added).

23        41.    "[T]he clear loser in the full-month interest policy is 'the one who can least

24  afford it, the consumer.'  Harney, Chicago Tribune, Apr. 11, 2004 (emphasis added).

25  "Hundreds of thousands of home sellers have had their pockets picked at closings during the

26  past decade: They've been charged interest on their mortgages after their principal debts had

27  been fully paid off."  Harney, Washington Post, Sep. 5, 2014 (emphasis added).

28

42.     Meanwhile, "the true beneficiaries of the long-standing practice were [the lenders], who could earn interest on the 'float' – the money they collected from borrowers and had free use of until the end of the month, when they had to disburse final interest payments to bond investors."  Kenneth R. Harney, *Controversial FHA Payoff Rule to End*, Los Angeles Times, Mar. 30, 2014, http://articles.latimes.com/2014/mar/30/business/la-fi-harney-20140330 (emphasis added).

43.     All of the relevant government agencies now agree that collecting post-payment interest is an unfair prepayment penalty and is against public policy.

44.     On August 26, 2009, the Board of Governors of the Federal Reserve System proposed a rule "to amend Regulation Z, which implements the Truth in Lending Act (TILA)," which regulates prepayment penalties.  74 Fed. Reg. 43232, 43232 (Aug. 26, 2009).  The Board stated that "[o]ne such example [of a prepayment penalty] is 'interest charges for any period after prepayment in full is made.'  When the loan is prepaid in full, there is no balance to which the creditor may apply the interest rate."  *Id.* at 43257 (emphasis added).

45.     On January 30, 2013, the Consumer Financial Protection Bureau issued a final version of its rule titled "Ability-to-Repay and Qualified Mortgage Standards under the Truth in Lending Act (Regulation Z)."  *See* 78 Fed. Reg. 6408, 6408 (Jan. 30, 2013).  Regulation Z broadly defines "prepayment penalty" as the "charge imposed for paying all or part of the transaction's principal balance before the date on which the principal is due."  *Id.* at 6444.

46.     This definition includes "charges resulting from FHA's monthly interest accrual amortization method."  79 Fed. Reg. 50835, 50835 (Aug. 26, 2014).  As CFPB explains:

> [I]t is appropriate to designate higher interest charges for consumers based on accrual methods that treat a loan balance as outstanding for a period of time after prepayment in full as prepayment penalties . . . .  In such instances, the consumer submits a payment before it is due, but the creditor nonetheless charges interest on the portion of the principal that the creditor has already received. The Bureau believes that charging a consumer interest after the consumer has repaid the principal is the functional equivalent of a prepayment penalty.

78 Fed. Reg. 6408, 6445 (Jan. 30, 2013) (emphasis added).

47.     Based on Regulation Z's definition, charges for post-payment interest are now subject to the Truth in Lending Act.  *See* 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014); 75 Fed. Reg. 58539, 58586 (Sep. 24, 2010) ("[T]he Board believes that the charging of interest for the remainder of the month in which prepayment in full is made should be treated as a prepayment

penalty for TILA purposes, even when done pursuant to the monthly interest accrual amortization method.").

48. In response to those changes by FRB and CFPB, on March 13, 2014, "HUD published a proposed rule in the Federal Register, at 79 FR 14200, to eliminate post-payment interest charges to borrowers resulting from FHA's monthly interest accrual amortization method for calculating interest." 79 Fed. Reg. 50835, 50835. And, on August 26, 2014, HUD issued a final version of its rule titled "Federal Housing Administration (FHA): Handling Prepayments: Eliminating Post-Payment Interest Charges." *Id.*

49. Under the new regulation, "[w]ith respect to FHA-insured mortgages closed on or after January 21, 2015, notwithstanding the terms of the mortgage, the [lender] shall accept a prepayment at any time and in any amount." 24 C.F.R. § 203.558 (a). "Monthly interest on the debt must be calculated on the actual unpaid principal balance of the loan as of the date the prepayment is received, and not as of the next installment due date." *Id.*

50. Although CFPB, FRB, and HUD have now all prohibited post-payment interest charges for FHA-insured mortgages closed on or after January 21, 2015, they did not make this change retroactive. "[T]he estimated 7.8 million existing FHA mortgage borrowers who are not covered by the forthcoming policy change will continue to be vulnerable to paying more than they should." Harney, Los Angeles Times, Mar. 30, 2014 (emphasis added).

**D.      Wells Fargo Did Not Provide An FHA-Approved Form To Plaintiff Before**
         **Collecting Post-Payment Interest.**

51. Wells Fargo was the holder of Plaintiff's loan secured by her home in Victorville, California. Plaintiff's loan was insured by the FHA, and so Wells Fargo is required to comply with the HUD Handbook and HUD regulations with respect to her loan.

52. Pursuant to HUD regulations, Plaintiff's promissory note contains certain uniform provisions found in the note for every FHA-insured loan. These uniform provisions include, among others, section 2 titled "Borrower's Promise to Pay; Interest" and section 5 titled "Borrower's Right to Prepay." *See Multistate – FHA Fixed Rate Note*, USFHA.NTE, at 1-2.

///

CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW –
UNLAWFUL AND UNFAIR BUSINESS PRACTICE
Page 10 of 17

53.    In 2013, Plaintiff refinanced her home.  So that she could pay off her loan with Wells Fargo, Plaintiff requested that Wells Fargo provide her with a payoff statement. Wells Fargo provided a payoff statement dated October 18, 2013.[2]  The statement is a form document, in which Wells Fargo uses form language throughout the document and fills in only the particular numbers and address information that correspond to a specific borrower.  *See* Payoff Statement, From Wells Fargo, To Plaintiff, attached as Exhibit 3, at 1.

54.    The form includes the statements "TOTAL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER NOTE / SECURITY INSTRUMENT"; "Unpaid Principal Balance $ "; "Interest as of "; and "TOTAL AMOUNT DUE through $ ." *Id.* at 2.

55.    The statement contains the following specific numbers for Fowler's loan: "Unpaid Principal Balance $154,907.90"; "Interest as of 11-01-13 [$] 1,065.00"; "TOTAL CONTRACTUAL AND OTHER FEES AND CHARGES DUE $28.00"; and "TOTAL AMOUNT DUE through 09-01-13 $ 156,341.33." *Id.* (emphasis added).

56.    Plaintiff's interest payments were $532.50 per month.  Thus, by representing that Plaintiff owed $1,065.00 in interest, Wells Fargo charged and sought to collect interest for two months – interest for the entire month of September 2013 and interest for the entire month of October 2013, even though the payoff statement was issued on October 18, 2013. *Id.*

57.    Wells Fargo has an admitted policy of charging post-payment interest on all FHA-insured loans such as Plaintiff's loan.

58.    On or about November 25, 2013, Plaintiff paid Wells Fargo $156,147.18, which includes the interest Wells Fargo represented it was owed.  And because Wells Fargo required Plaintiff to pay interest for the entire month of November 2013 – even though Plaintiff paid the full unpaid principal by November 25, 2013 – Wells Fargo collected post-payment interest.

59.    However, Wells Fargo did not first provide Plaintiff with a HUD-approved form. For one, the form used by Wells Fargo is not a HUD-approved form, nor does it include all of the essential elements of the FHA-approved form, and FHA or HUD approval is an express requirement of HUD regulations.

---

[2] This is the only payoff statement currently in Plaintiff's possession, but she does not deny additional payoff statements in the same form may exist and have been sent to her by Wells Fargo.

60.     HUD's approved forms included with its handbooks are designed to be consumer-friendly.

61.     Appendix 8(c) to HUD Handbook 4330.1 rev-1 is nearly a page long, has a capitalized title (MORTGAGE NOTICE TO MORTGAGOR (In response to prepayment inquiry, request for payoff or tender of prepayment in full), two easy-to-read, distinct paragraphs labeled (a) and (b), with options for how interest will be charged, along with boxes for the lender to check the applicable option, and a place for the lender to sign at the bottom, emphasizing the significance of the document to borrowers.

62.     Similarly the disclosure form appended to HUD Handbook 4000.1 is nearly a full page long, has a capitalized title (PAYOFF PROCEDURE DISCLOSURE), two easy-to-read distinct paragraphs with boxes for the lender to check the applicable option, and a place for the lender to sign at the bottom.

63.     Wells Fargo's unapproved form is nothing like Appendix 8(c) or the Payoff Procedure Disclosure Form.

64.     Wells Fargo's unapproved form does not have a title relating to post-payment interest, separate paragraphs, check-boxes, or anywhere for the lender to sign; instead, Wells Fargo's form squeezes two sentences about post-payment interest into a single confusing paragraph.

65.     Moreover, the language that Wells Fargo uses is different from HUD's approved disclosures and is both misleading and confusing.   The relevant language consists of two sentences.  The first sentence tells Plaintiff that "[w]e will collect interest through the end of the month in which we receive the payoff funds." *Id.* at 1 (emphasis added).  Because this language is unconditional, Wells Fargo wrongly tells Plaintiff that, even if payment is made on the first of the month, Wells Fargo "will" collect interest through the end month of that month – which both the uniform provisions of the note and FHA regulations prohibit Wells Fargo from doing. *See* Multistate – FHA Fixed Rate Note, USFHA.NTE at 2 ("Borrower has the right to pay the debt . . . without charge or penalty, on the first day of any month."); 24 C.F.R. § 203.558 (c) (2014).

66.     The second sentence further reinforces the misleading and confusing nature of the first sentence.  It tells Plaintiff that, "[t]o avoid paying an extra month of interest, it is to your advantage to arrange closing so the payoff funds reach us on or before the first business day of

1  the month." _____ Payoff Statement, From Wells Fargo, to Vana Fowler, at 1 (emphasis
2  added). Because this language follows the first sentence – "[w]e will collect interest through the
3  end of the month" – Wells Fargo wrongly tells Plaintiff that, no matter what she has to pay
   interest through the end of the month in which payment is received, and only addresses how to
4  avoid payment of interest for an "extra month." In other words, Wells Fargo only addresses
5  how to avoid a second month of post-payment interest.

6       67.    The effect of Wells Fargo's illegal collection of post-payment interest is that
7  Plaintiff was charged interest twice – by Wells Fargo and her new lender – for the period
8  between the date of closing and the end of the month.

                              <u>Class Action Allegations</u>
9       68.    Plaintiff asserts claims on behalf of herself and a class similarly-situated persons
10 pursuant to Code of Civil Procedure § 382.

11      69.    Plaintiff currently proposes the following class:

12         any person who had a FHA-insured loan secured by a mortgage on real property
           located in California for which (i) the Date of the Note is during a period
13         beginning on June 1, 1996 and ending on January 20, 2015; (ii) as of the date the
           total amount due on the loan was brought to zero, Wells Fargo was the Lender,
14         Mortgagee, or otherwise held legal title to the Note; and (iii) Wells Fargo
           collected interest for any period after the total amount due on the loan was
15         brought to zero (i.e., Wells Fargo collected "post-payment interest.")

16      70.    Plaintiff reserves the right to revise this class definition.
17
18      71.    Plaintiff proposes certification of all issues, while reserving the right to
   alternatively seek certification as to any specific claim or issue.

19      72.    Plaintiff would serve as the class representative.

20      73.    Plaintiff satisfies the requirements of Code of Civil Procedure § 382:

21         a.    <u>Numerosity</u> – The class is so numerous that joinder is impracticable. The
22               FHA is the largest insurer of mortgages in the world, currently insuring
23               around 4.8 million single family homes. And, in just one month in 2015,
                 Wells Fargo originated over 2,600 FHA-insured loans. Plaintiff estimates
24               that the class consists of tens of thousands of persons.

25         b.    <u>Commonality</u> – There are numerous common questions of law and fact,
26               including but not limited to the following:

27               i.   Whether, before collecting post-payment interest, Wells Fargo
28

complied with the contractual and regulatory requirements that it provide the borrowers with an approved disclosure.

ii. Whether and when Wells Fargo knew that it failed to make required disclosures relating to post-payment interest.

iii. Whether Wells Fargo engaged in unlawful or unfair business practices with respect to the collection of post-payment interest.

iv. Whether Wells Fargo's conduct violated the note, regulations, Business & Professional Code § 17200, *et seq.*, Business & Professions Code § 17500 and the common law of unjust enrichment.

v. Whether Wells Fargo's conduct violates the Rosenthal Fair Debt Collection Practices Act.

vi. Whether Plaintiff and Class members are entitled to restitution.

vii. Whether Plaintiff and Class members are entitled to equitable relief and if so, the nature of the relief.

c. Typicality – Plaintiff's claims are typical of the classes' claims. Plaintiff's promissory note is not just typical of the rest of the class, but is identical with respect to relevant provisions at issue in this case. Further, because Wells Fargo uses form payoff statements, Plaintiff has been subject to conduct that is typical of the rest of the class. Wells Fargo has sought to collect post-payment interest from Plaintiff in the same manner that it has sought to collect post-payment interest from the rest of the class.

d. Adequacy – Plaintiff would adequately protect the class's interests. Plaintiff has a genuine interest in protecting the rights of the class and Plaintiff's counsel is experienced in handling complex class actions. Indeed, Plaintiff's counsel has been designated and approved as class counsel in numerous state and federal courts. Further, because Plaintiff challenges form payoff statements used by Wells Fargo, the interests of Plaintiff and the class are aligned.

e. Predominance – The answers to the common questions in this case will decide liability for the entire class. If Plaintiff establishes that Wells

Fargo's practice of collecting post-payment interest without making the approved disclosure required under the note and HUD regulations violates the UCL, it will establish liability for all Class members, without the need for any additional proof as to liability. Thus, common issues predominate over individual issues.

f.   Superiority – A class action is superior to other available remedies. The common questions would predominate over any individual questions, and thus no other form of litigation could be superior to a class action. Further, because of the low dollar amounts at stake for each class member, a class action is the only way for Plaintiff and other Class members to obtain redress. Moreover, the most efficient way to resolve the class's claims is for a court to decide all claims in a single class. Requiring tens of thousands of Class members to individually litigate their claims over and over again in various courts would be vastly inefficient. It also raises the possibility of inconsistent judgments or conflicting declaratory and injunctive relief.

## FIRST CAUSE OF ACTION

**(Violation of California Unfair Competition Law – Unlawful and Unfair Business Practice)**

74.   Plaintiff incorporates by reference the allegations contained in all preceding paragraphs of this Complaint.

75.   California Business and Professions Code §17200 et seq. prohibits acts of unfair competition, which include, without limitation, unlawful and unfair business practices, each of which is separately actionable.

76.   Wells Fargo acted unlawfully and unfairly by collecting post-payment interest payments without first providing the required HUD-approved disclosure in response to Plaintiff's and Class members' inquiry, request for payoff figures, or tender of prepayment.

77.   Likewise, Wells Fargo's collection of interest not authorized under the contract or permitted under law violates the Rosenthal Fair Debt Collection Practices Act as it incorporates 1692f(1) of the Fair Debt Collection Practices Act. Cal Civ Code § 1788.17.

78.   Wells Fargo is a "debt collector" as defined under the Rosenthal Act.

79.     Wells Fargo's practice was unlawful in that it violated the note, the California common law of contract, the California law of unjust enrichment, section 17500 of the California Business and Professions Code, Cal Civ Code § 1788.17, and 24 C.F.R. § 203.558.

80.     The practice was unfair in that it is immoral, unethical, oppressive, unscrupulous and substantially injurious to consumers. The financial injury to consumers by Defendants conduct greatly outweighs any alleged countervailing benefit.

81.     The injury to consumers by Defendant's conduct is not an injury that consumers themselves could reasonable have avoided because of Defendant's omission of material fact.

82.     Plaintiff suffered an injury-in-fact from Wells Fargo's unlawful and unfair conduct in the form of paying interest that they were not required to pay under HUD regulations or their contracts.

83.     Wells Fargo's unlawful and unfair conduct caused Plaintiff and Class members harm.

84.     Plaintiff would not have paid, and would not have agreed to pay, post-payment interest had Wells Fargo properly disclosed the interest charges in response to her request for payoff. Instead, she would have scheduled the closing of her refinance for the last business day of the month or the first business day of the following month.

85.     To this day, Defendant has engaged and continues to engage in unlawful and unfair business practices by keeping the interest that it unlawfully and unfairly collected and failing to inform Plaintiff and Class members of its illegal practices.

86.     As a direct and proximate cause of Defendant's unlawful and unfair practices, Plaintiff and Class members have suffered actual damages in that they have paid interest that they did not owe.

87.     As a proximate result of its unlawful and unfair practices, Defendant has been unjustly enriched and should be required to make restitution to the Plaintiff and Class members pursuant to §§ 17203 and 17204 of the California Business & Professions Code.

<u>Relief Requested</u>

Plaintiff asks this Court to:

    a.    certify this action as a class action, including certifying Plaintiff as class representative and undersigned counsel as class counsel;

    b.    grant judgment as a matter of law in favor of Plaintiff and the Class on any

1    or all issues or, in the alternative, hold a trial to decide any disputed fact

2    questions;

        c.    award Plaintiff and the Class restitution and any damages they are entitled

3

4    to, including but not limited to statutory damages and penalties, attorney

        fees, pre-judgment interest, post-judgment interest, and costs;

5       d.    enjoin Wells Fargo from continuing the unlawful practices set forth here;

6       e.    and order any other relief as the Court may deem proper and just.

7   Respectfully submitted this 9th day of March 2017.

8

9

10                   Michael F. Ram (SBN 104805)

11                  mram@rocklawcal.com
                     Susan S. Brown (SBN #287986)

12                 sbrown@rocklawcal.com
                     RAM, OLSON, CEREGHINO

13                   & KOPCZYNSKI LLP
                     101 Montgomery Street, Suite 1800

14                 San Francisco, California 94104
                     Telephone:  (415) 433-4949

15                 Facsimile:  (415) 433-7311

16                 Kevin E. Epps *[To Be Admitted Pro Hac Vice]*

17                 kevin@ehdhlaw.com
                     Adam L. Hoipkemier *[To Be Admitted Pro Hac Vice]*

18                 adam@ehdhlaw.com
                     EPPS, HOLLOWAY, DELOACH &

19                 HOIPKEMIER, LLC
                     1220 Langford Drive, Bldg. 200

20                 Watkinsville, GA 30677

21                 *Attorneys for Plaintiff and Proposed Class*

22

23

24

25

26

27

28



# Superior Court of California, County of San Francisco
## Alternative Dispute Resolution
## Program Information Package



> The plaintiff must serve a copy of the ADR information package
> on each defendant along with the complaint. (CRC 3.221(c))

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial. There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences. In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

## WHY CHOOSE ADR?

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.** A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.** The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.** For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case. General civil cases may voluntarily enter into the court's ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet)
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-782-8905 or www.sfbar.org/adr for more information.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
415-551-3869

*Or, visit the court ADR website at www.sfsuperiorcourt.org*

The San Francisco Superior Court offers different types of ADR processes for general civil matters; each ADR program is described in the subsections below:

## 1) SETTLEMENT CONFERENCES

The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute early in the litigation process.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** ESP remains as one of the Court's ADR programs (see Local Rule 4.3) but parties must select the program – the Court no longer will order parties into ESP.

**Operation:** Panels of pre-screened attorneys (one plaintiff, one defense counsel) each with at least 10 years' trial experience provide a minimum of two hours of settlement conference time, including evaluation of strengths and weakness of a case and potential case value. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist. BASF handles notification to all parties, conflict checks with the panelists, and full case management. The success rate for the program is 78% and the satisfaction rate is 97%. Full procedures are at: www.sfbar.org/esp.

**Cost:** BASF charges an administrative fee of $295 per party with a cap of $590 for parties represented by the same counsel. Waivers are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see enclosed brochure.

**(B) MANDATORY SETTLEMENT CONFERENCES:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** Experienced professional mediators, screened and approved, provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process. BASF staff handles conflict checks and full case management. Mediators work with parties to arrive at a mutually agreeable solution. The success rate for the program is 64% and the satisfaction rate is 99%.

**Cost:** BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the administrative fee are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

**(B) JUDICIAL MEDIATION** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at anytime throughout the litigation process.

**Operation:** Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge for the Judicial Mediation program.

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may elect any private mediator of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

## 3) ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION:** When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation:** Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. <u>YOU MUST ALSO CONTACT BASF TO ENROLL IN THE LISTED BASF PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF.</u>



# Superior Court of California
## County of San Francisco



HON. JOHN K. STEWART
PRESIDING JUDGE

## Judicial Mediation Program

JENIFFER B. ALCANTARA
ADR ADMINISTRATOR

The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to personal injury, professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial Mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable Michael I. Begert
The Honorable Suzanne R. Bolanos
The Honorable Angela Bradstreet
The Honorable Andrew Y.S. Cheng
The Honorable Samuel K. Feng
The Honorable Charles F. Haines

The Honorable Harold E. Kahn
The Honorable Curtis E.A. Karnow
The Honorable Charlene P. Kiesselbach
The Honorable James Robertson, II
The Honorable Richard B. Ulmer, Jr.
The Honorable Mary E. Wiss

Parties interested in Judicial Mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program and deliver a courtesy copy to Department 610. A preference for a specific judge may be indicated on the request, and although not guaranteed, every effort will be made to fulfill the parties' choice. Please allow at least 30 days from the filing of the form to receive the notice of assignment. The court's Alternative Dispute Resolution Administrator will facilitate assignment of cases that qualify for the program.

Note: Space and availability is limited. Submission of a stipulation to Judicial Mediation does *not* guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3869

03/2015 (ja)

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and address) | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.: <br> ATTORNEY FOR (Name): | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**
400 McAllister Street
San Francisco, CA 94102-4514

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER: <br> **DEPARTMENT 610** |
|---|---|

1)    **The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐    **Early Settlement Program of the Bar Association of San Francisco (BASF)** - Pre-screened experienced attorneys provide a minimum of 2 hours of settlement conference time for a BASF administrative fee of $295 per party. Waivers are available to those who qualify. BASF handles notification to all parties, conflict checks with the panelists, and full case management. www.sfbar.org/esp

☐    **Mediation Services of BASF** - Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐    **Private Mediation** - Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐    **Judicial Arbitration** - Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org

☐    **Judicial Mediation** - The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days    ☐ 90-120 days    ☐ Other (please specify) _____

☐   **Other ADR process (describe)** _____

2)    **The parties agree that the ADR Process shall be completed by (date):** _____

3)    **Plaintiff(s) and Defendant(s) further agree as follows:**

_____

_____

_____    _____
Name of Party Stipulating                        Name of Party Stipulating

_____    _____
Name of Party or Attorney Executing Stipulation        Name of Party or Attorney Executing Stipulation

_____    _____
Signature of Party or Attorney                        Signature of Party or Attorney

☐ Plaintiff ☐ Defendant ☐ Cross-defendant        ☐ Plaintiff ☐ Defendant ☐ Cross-defendant

Dated: _____                        Dated: _____

☐   *Additional signature(s) attached*

ADR-2  03/15                **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

TELEPHONE NO.:                    FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):*

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|

*(Check one):* ☐ **UNLIMITED CASE**  ☐ **LIMITED CASE**
(Amount demanded          (Amount demanded is $25,000
exceeds $25,000)           or less)

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:                   Time:              Dept.:          Div.:          Room:

Address of court *(if different from the address above):*

☐ Notice of Intent to Appear by Telephone,  by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐  This statement is submitted by party *(name):*
   b. ☐  This statement is submitted **jointly** by parties *(names):*


2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.  The complaint was filed on *(date):*
   b. ☐  The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
      (1) ☐  have not been served *(specify names and explain why not):*

      (2) ☐  have been served but have not appeared and have not been dismissed *(specify names):*

      (3) ☐  have had a default entered against them *(specify names):*

   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*


4. **Description of case**
   a.  Type of case in  ☐  complaint  ☐  cross-complaint     *(Describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Page 1 of 5

Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☐ days *(specify number):*
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  E-mail address:
f.  Fax number:
g.  Party represented:
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**
a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
   (1) For parties represented by counsel: Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.
   (2) For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.
b.  **Referral to judicial arbitration or civil action mediation** (if available).
   (1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.
   (2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
   (3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c.  Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed to** participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date)*:<br>☐ Agreed to complete mediation by *(date)*:<br>☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date)*:<br>☐ Agreed to complete settlement conference by *(date)*:<br>☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date)*:<br>☐ Agreed to complete neutral evaluation by *(date)*:<br>☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date)*:<br>☐ Agreed to complete judicial arbitration by *(date)*:<br>☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date)*:<br>☐ Agreed to complete private arbitration by *(date)*:<br>☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date)*:<br>☐ Agreed to complete ADR session by *(date)*:<br>☐ ADR completed on *(date)*: |

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**
a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
b. Reservation of rights: ☐ Yes ☐ No
c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**
Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.
☐ Bankruptcy ☐ Other *(specify):*
Status:

**13. Related cases, consolidation, and coordination**
a. ☐ There are companion, underlying, or related cases.
(1) Name of case:
(2) Name of court:
(3) Case number:
(4) Status:
☐ Additional cases are described in Attachment 13a.
b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**
☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**
☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**
a. ☐ The party or parties have completed all discovery.
b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| | | |

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*:

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**20. Total number of pages attached *(if any)*:** _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____          ▶ _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY)

_____          ▶ _____
(TYPE OR PRINT NAME)                                    (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.



# Superior Court of California
# County of San Francisco

### Expedited Jury Trial Information Sheet

**What is an expedited jury trial?**

An expedited jury trial is a trial that is much faster and has a smaller jury than a traditional jury trial. An expedited jury trial differs from a regular jury trial in several ways:

- **The trial will be shorter.** Each side has 3 hours to make opening statements, present witnesses and evidence, and make closing statements.

- **The jury will be smaller.** There will be 8 jurors instead of 12.

- **Choosing the jury will be faster.** The parties will exercise fewer preemptory challenges.

- **Parties will waive some post trial motions and rights to appeal.** Appeals are allowed only if there is: (1) Misconduct of the judicial officer that materially affected substantial rights of a party; (2) Jury misconduct; or (3) Corruption or fraud or some other bad act that prevented a fair trial.

  In addition, parties may not ask the judge to set the jury verdict aside, except on those same grounds.

**Does the jury have to reach a unanimous decision?**

No. Just as in a traditional civil jury trial, only three-quarters of the jury must agree in order to reach a decision in an expedited jury trial. With 8 people on the jury, that means that at least 6 of the jurors must agree on the verdict in an expedited jury trial.

**Is the decision of the jury binding on the parties?**

Generally, yes. A verdict from a jury in an expedited jury trial is like a verdict in a traditional jury trial. However, parties who take part in expedited jury trials are allowed to make an agreement before the trial that guarantees that the defendant will pay a certain amount to the plaintiff even if the jury decides on a lower payment or no payment. That agreement may also impose a cap, or maximum, on the highest amount that a defendant has to pay, even if the jury decides on a higher amount. These agreements are commonly known as "high/low agreements."

**How do I qualify for an expedited jury trial?**

The process can be used in any civil case. To have an expedited jury trial, both sides must want one. Each side must agree that it will use only three hours to put on its case and agree to the other rules described above. This agreement must be put in writing in a Stipulation and submitted along with a Proposed Consent Order Granting an Expedited Jury Trial, which is given to the court for approval. The court will usually agree to the Consent Order.

**How do I request an expedited jury trial?**

To have an expedited jury trial, both sides must submit a Stipulation and Proposed Consent Order for Expedited Jury Trial to the court for approval. This may happen at three stages of litigation:

**1) At Filing and Prior to Setting of a Trial Date:** Parties may submit a Stipulation to Expedited Jury Trial to Dept. 610 using the attached short form (see below). Parties must

*Information adapted from Judicial Council's Expedited Jury Trial Information Sheet EJT-010-INFO, New January 1, 2011*

also submit a Proposed Consent Order for Expedited Jury Trial to Dept. 610.

**2) After a Trial Date has been Set**: Parties submit a Stipulation and Proposed Consent Order for Expedited Jury Trial directly to Dept. 206 at least *30 days* prior to the assigned trial date.

**3) After Trial Assignment**: A Proposed Consent Order for Expedited Jury Trial may be submitted immediately to the assigned trial department not less than *30 days* prior to the assigned trial date.

Also, after a case is assigned to a particular judge for trial, the parties may ask the trial judge to have an Expedited Jury Trial, and the judge may permit the parties to then sign the appropriate Stipulation and Proposed Consent Order for Expedited Jury Trial.

**Can I change my mind after agreeing to an expedited jury trial?**

No, unless the other side or the court agrees. Once you and the other side have agreed to take part in an expedited jury trial the agreement is binding on both sides.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Expedited Jury Trial Request**
*Please submit a copy of this request to Dept. 610.*

Case No. _____

Case Name: _____        v.

The parties would like this action to be submitted to an Expedited Jury Trial.

The parties shall submit a consent order to the Court on or by _____.

| | | |
|---|---|---|
| Name of Party | Name of Party/Attorney | Signature of Party |
| | | Dated: _____ |
| Name of Party | Name of Party/Attorney | Signature of Party |
| | | Dated: _____ |
| Name of Party | Name of Party/Attorney | Signature of Party |
| | | Dated: _____ |

Please note: a [Proposed] Consent Order for Expedited Jury Trial is still required in addition to this stipulation form.

You can find the law and rules governing expedited jury trials in Code of Civil Procedure sections 630.01–630.12 and in rules 3.1545–3.1552 of the California Rules of Court. You can find these at any county law library or online. The statutes are online at *www. leginfo.ca.gov/calaw. html*. The rules are at *www. courts.ca.gov/rules*.

*Information adapted from Judicial Council's Expedited Jury Trial Information Sheet EJT-010-INFO, New January 1, 2011*