1   ROBINS KAPLAN LLP
    Michael F. Ram (SBN 104805)
2   mram@robinskaplan.com
    Susan S. Brown (SBN #287986)
3   sbrown@robinskaplan.com
4   2440 West El Camino Real, Suite 100
    Mountain View, CA 94040
5   Telephone: 650 784 4040
    Facsimile: 650 784 4041
6
7   EPPS, HOLLOWAY, DELOACH &
    HOIPKEMIER, LLC
8   Kevin E. Epps (appearing *pro hac vice*)
    kevin@ehdhlaw.com
9   Adam L. Hoipkemier (appearing *pro hac vice*)
    adam@ehdhlaw.com
10  1220 Langford Drive, Bldg. 200
11  Watkinsville, GA 30677
12  Attorneys for Plaintiff Vana Fowler
13  MCGUIREWOODS LLP
14  DAVID S. REIDY SBN #225904
    Two Embarcadero Center
15  Suite 1300
    San Francisco, CA  94111-3821
16  Telephone: (415) 844-9944
    Facsimile: (415) 844-9922
17
    K. Issac deVyver (appearing *pro hac vice*)
18  Karla L. Johnson (appearing *pro hac vice*)
    Tower Two-Sixty
19  260 Forbes Avenue, Suite 1800
    Pittsburgh, PA 15222-3142
20  Telephone: (412) 667-6000
    Facsimile: (412) 667-6050
21
    Sara F. Holladay-Tobias (appearing *pro hac vice*)
22  50 North Laura Street, Suite 3300
    Jacksonville, FL 32202
23  Telephone: (904) 798-3200
    Facsimile: (904) 798-3207
24
    Attorneys for Defendant
25  Wells Fargo Bank, N.A.
26
27
28

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| VANA FOWLER, individually and on behalf of all others similarly situated<br><br>                Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>                Defendant. | Case No. 4:17-cv-02092-HSG<br><br>**JOINT STIPULATION TO CONDITIONALLY AMEND THE COMPLAINT FOR SETTLEMENT PURPOSES**<br><br>HON. HAYWOOD S. GILLIAM, JR.<br><br>DATE: May 31, 2018<br>TIME: 2:00 p.m.<br>LOCATION: Courtroom 2 |

**STIPULATION**

WHEREAS, the Complaint filed by Plaintiff Vana Fowler on March 9, 2017 is the operative complaint;

WHEREAS, the Complaint originally alleged causes of action for violation of California Business and Professions Code § 17200 *et seq*. and a California class;

WHEREAS, Wells Fargo moved to dismiss the Complaint;

WHEREAS, the Court granted in part and denied in part Wells Fargo's motion;

WHEREAS, counsel for Plaintiff also represent Michael Peters with respect to claims against Wells Fargo on behalf of a putative nationwide class (ex-California) related to the collection of post-payment interest, which are currently pending in the Southern District of Texas (*Michael Peters, et al. v. Wells Fargo Bank, N.A.*, Civil Action No. 4:18-cv-00136);

WHEREAS, the Parties engaged in a day-long mediation on January 15, 2018, before the Hon. Daniel Weinstein (Ret.) of JAMS;

WHEREAS, the Parties reached a nationwide settlement which they are presenting concurrently with the submission of this Joint Stipulation to Conditionally Amend the Complaint for Settlement Purposes ("Joint Stipulation");

NOW THEREFORE, the Parties have agreed to stipulate to the filing of an amended complaint pursuant to Federal Rule 15(a)(2), subject to the Court's approval, as follows:

1. Upon entry of the Order granting this Joint Stipulation, Plaintiff be permitted to amend her Complaint to conform to the terms of the proposed settlement as follows: (1) add Michael Peters as a plaintiff pursuant to Federal Rules 15 and 24; (2) allege a cause of action for breach of contract; and (3) amend the class definition to allege a nationwide class.

2. Upon the entry of the Order granting this Joint Stipulation, the First Amended Complaint attached as Exhibit A shall be deemed filed and served. Defendant's previously filed Answer to Plaintiff's Complaint shall be deemed as Defendant's Answer to Plaintiff's First Amended Complaint.

3. This agreement shall remain in effect only if the settlement becomes final, which means that neither party has voided the settlement, the settlement is approved by the Court, and the judgment becomes final, in that all dates for appeal have passed and no successful appeal challenging the judgment has occurred. If, for some reason, the settlement does not become final, then this agreement and this amendment to the complaint shall be deemed null and void, the operative complaint in this action shall be the Complaint, and the Parties shall be returned to their status as of the date of this filing without prejudice to any claim, right, or defense.

IT IS SO STIPULATED.


/s/ Adam L. Hoipkemier
Adam L. Hoipkemier
Epps Holloway DeLoach
& Hoipkemier LLP
1220 Langford Drive
Watkinsville, Georgia 30677

Michael F. Ram
Susan S. Brown
Robins Kaplan LLP
2440 W. El Camino Real, Suite 100
Mountainview, CA 94040

*Counsel for Plaintiff Vana Fowler*

/s/ K. Issac deVyver
K. Issac deVyver
McGuireWoods LLP
Tower Two-Sixty
260 Forbes Avenue, Suite 1800
Pittsburgh, PA 15222-3142

*Counsel for Defendant Wells Fargo Bank, N.A.*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**PURSUANT TO STIPULATION, IT IS SO ORDERED** except counsel for Plaintiff is ordered to e-file the amended complaint on the docket.

Dated: ___6/28/2018_____

_Haywood S. Gilliam Jr._
Honorable Haywood S. Gilliam, Jr.
United States District Judge

Robins Kaplan LLP
Michael F. Ram (SBN 104805)
mram@robinskaplan.com
Susan S. Brown (SBN #287986)
sbrown@robinskaplan.com
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone:    650 784 4040
Facsimile:    650 784 4041

Adam L. Hoipkemier *[Admitted Pro Hac Vice]*
adam@ehdhlaw.com
Kevin E. Epps *[Admitted Pro Hac Vice]*
kevin@ehdhlaw.com
EPPS, HOLLOWAY, DELOACH &
HOIPKEMIER, LLC
1220 Langford Drive, Bldg. 200
Watkinsville, GA 30677

Turke & Strauss LLP
Samuel Strauss *[Admitted Pro Hac Vice]*
sam@turkestrauss.com
613 Williamson Street, Suite 209
Madison, Wisconsin 53703-3515
Telephone: 608 237 1774
Facsimile: 608 509-4423

*Attorneys for Plaintiffs and Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VANA FOWLER and MICHAEL PETERS, | Case No.  4:17-CV-02092-HSG |
| Plaintiffs, | |
| v. | **FIRST AMENDED COMPLAINT** |
| WELLS FARGO BANK, N.A., | |
| Defendant. | |

# TABLE OF CONTENTS

Summary ................................................................................................................................. 1

Parties ................................................................................................................................... 2

Jurisdiction ........................................................................................................................... 2

Fact Allegations ................................................................................................................... 3

    A.    Borrowers Pay for and the FHA Supplies Mortgage Insurance To Lenders. ......... 3

    B.    The FHA Prohibits Lenders from Collecting Post-Payment Interest on FHA-Insured Loans, Unless They First Provide A FHA-Approved Disclosure Form. ......................................................................................................... 3

    C.    Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-Insured Loans. ........................................................................................... 7

    D.    Wells Fargo Did Not Provide An FHA-Approved Form To Plaintiffs Before Collecting Post-Payment Interest. ............................................................. 10

Class Action Allegations ..................................................................................................... 13

FIRST CAUSE OF ACTION (Breach of Contract) ...................................................... 15

Relief Requested ................................................................................................................ 16

**Summary**

1.     Defendant Wells Fargo Bank, N.A. has a systematic practice of collecting "post-payment" interest on loans insured by the Federal Housing Administration without first complying with the uniform provisions of the promissory notes and the regulations governing these loans.  As a result, Wells Fargo has collected tens of millions of dollars in post-payment interest from Californians in breach of contract, and through this class action, Plaintiffs seeks to recover damages for those Class members injured by Wells Fargo.

2.     Post-payment interest refers to interest that a lender collects **after** the borrower has paid the **full** unpaid principal of the loan.  For example, if a borrower pays off the loan in full on August 5, and the lender continues collecting interest for the remainder of August, the interest collected after August 5 is post-payment interest.

3.     A promissory note governs the contractual relationship between borrowers and lenders, and lenders issuing FHA-insured loans must include certain uniform provisions in the notes for these loans.  Among other things, the uniform provisions provide that the lender may collect post-payment interest for the remainder of the month in which full payment is made, but only "**to the extent** . . . **permitted by** [**FHA**] **regulations**."  Multistate – FHA Fixed Rate Note, USFHA.NTE.

4.     HUD regulations prohibit lenders from collecting post-payment interest unless two strict conditions are met: (a) the borrower makes payment of the full unpaid principal on a day "**other than** [the first of the month]" and (b) the lender must provide the borrower with "**a form approved by the** [**FHA**]."  24 C.F.R. § 203.558 (c) (2014) (emphasis added).

5.     HUD requires use of its approved form because the form explains to borrowers, at the appropriate time, that the lender is seeking to collect post-payment interest, the terms under which the lender can collect post-payment interest, and how they can avoid such charges.  *See* HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5 Appendix 8 (C).

6.     Although the uniform provisions of the note, HUD handbooks, and HUD regulations prohibit lenders from collecting post-payment interest unless they provide borrowers with a HUD-approved form, Wells Fargo does not use the approved form attached to HUD Handbook 4330.1 or the "Payoff Procedure Disclosure Form" hyperlinked in HUD Handbook 4000.1.  Instead, Wells Fargo uses its own unauthorized form, which is not approved by HUD and

does not fairly disclose the terms under which Wells Fargo can collect post-payment interest or properly explain how borrowers can avoid such charges.

7. Because Wells Fargo does not use a HUD-approved form as required by both the uniform provisions of the note, the HUD Handbooks and HUD regulations, Wells Fargo has no right to collect post-payment interest from borrowers. Yet, Wells Fargo has collected tens of millions of dollars in post-payment interest from Plaintiffs and the nationwide class of borrowers of FHA-insured loans to which it was not entitled. Through this class action, Plaintiffs seek to recover the overcharged interest for themselves and Class members.

## Parties

8. Plaintiff Vana Fowler is a citizen of California, residing in Victorville, California. In November 2013, Fowler paid off an FHA-insured loan held by Defendant Wells Fargo Bank, N.A.

9. Plaintiff Michael Peters is a citizen of Texas, residing in Montgomery, Texas. In February 2017, Plaintiff Peters paid off an FHA-insured loan held by Defendant Wells Fargo Bank, N.A.

10. Defendant Wells Fargo Bank, N.A. is a national banking association. Wells Fargo held FHA-insured loans for Plaintiffs and other Class members. These loans have been paid off in full.

11. Wells Fargo's Articles of Association state that its main office shall be in Sioux Falls, South Dakota. Thus, Wells Fargo is a citizen of South Dakota. *See* 28 U.S.C. § 1348.

## Jurisdiction

12. This Court has subject matter jurisdiction over this class action. Plaintiffs are citizens of States different from Wells Fargo, and so are many other Class members. *See* 28 U.S.C. § 1332 (d)(2). And the claims of the Class in the aggregate exceed the minimally required amount in controversy. *See* 28 U.S.C. § 1332 (d)(6). In fact, the amount in controversy involves tens of millions of dollars.

13. This Court has personal jurisdiction over Wells Fargo. Among other things, Wells Fargo is registered to and does conduct business in California, holds mortgages on real property in California, has breached contracts with persons located in California, has caused injuries in California, and generally engages in substantial activity in California.

14. This Court is also a proper venue for this action. Wells Fargo is subject to personal

jurisdiction in the Northern District of California, which "[f]or purposes of venue," means that Wells Fargo resides in this judicial district. 28 U.S.C. § 1391 (b)(1), (c).

<u>**Fact Allegations**</u>

**A.    Borrowers Pay for and the FHA Supplies Mortgage Insurance To Lenders.**

15.    The Department of Housing and Urban Development is a department within the executive branch of the United States government. HUD was established in 1965 by the Department of Housing and Urban Development Act. *See* 42 U.S.C. § 3532. The Federal Housing Administration was established in 1934 by the National Housing Act of 1934. *See* 12 U.S.C. § 1701. When HUD was created, Congress re-organized the FHA as an agency within HUD.

16.    Among other things, the FHA provides mortgage insurance to FHA-approved lenders for loans on single-family homes. *See* U.S. Dep't of Housing and Urban Devt., http://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/fhahistory. The FHA is the largest insurer of mortgages in the world, currently insuring approximately 4.8 million single family homes. *Id.*

17.    Mortgage insurance protects lenders against losses that are caused by borrower defaults. The lenders bear less risk on FHA-insured loans because the FHA will pay lenders in the event of a borrower default. *Id.* In exchange for FHA mortgage insurance, borrowers pay an upfront mortgage insurance premium and also make monthly premium payments.

18.    To be eligible to receive FHA mortgage insurance, lenders must be pre-approved by the FHA. Lenders must also comply with FHA regulations, including but not limited to the regulations contained in Title 24, Subtitle B, Chapter II, Subpart B, Part 203 of the Code of Federal Regulations. Among other things, FHA regulations require that, for any FHA-insured loan, the lender must include certain uniform provisions in every promissory note. As a result, each of the approximately 4.8 million FHA-insured loans is documented by a promissory note containing certain uniform provisions.

**B.    The FHA Prohibits Lenders from Collecting Post-Payment Interest on FHA-Insured Loans, Unless They First Provide A FHA-Approved Disclosure Form.**

19.    One uniform provision lenders must include in the promissory note for every FHA-insured loan addresses the borrower's promise to pay interest for unpaid principal:

2.    BORROWER'S PROMISE TO PAY; INTEREST
    In return for a loan received from Lender, Borrower promises to pay the principal sum of _____ Dollars (U.S. $ _____), plus interest, to the

order of Lender. **Interest will be charged on unpaid principal**, from the date of disbursement of the loan proceeds by Lender, at the rate of _____ percent ( _____ %) per year **until the full amount of the principal has been paid**.

Multistate – FHA Fixed Rate Note, USFHA.NTE at 1 (emphasis added).

20.     Under this provision, the borrower agrees to pay interest only on the **unpaid principal**, and once the borrower pays the full unpaid principal, interest no longer accrues. This makes sense because, by definition, interest is calculated from the amount of the outstanding principal loaned by the lender to the borrower.

21.     In fact, when lenders issue loans backed by Fannie Mae, Freddie Mac, and the Veterans Administration, interest charges stop on the day the borrower pays the full unpaid principal of the loan, and the lender cannot collect any post-payment interest.

22.     However, for nearly thirty years, the FHA maintained a policy different from the other government agencies. For mortgages insured by the FHA on or after August 2, 1985 and through January 20, 2015, the FHA allows lenders, subject to strict limitations, to collect interest even after the borrower has paid the full amount of the unpaid principal.

23.     This type of interest is often referred to as "post-payment" interest. Post-payment interest is interest that a lender collects even after the borrower has paid the full unpaid principal. It is also considered a "penalty" because, at that point, the borrower owes the lender **nothing**; the full unpaid principal has been paid, and the lender has all the money it was owed. The lender is penalizing the borrower for paying the loan before the maturity date.

24.     Although HUD permits lenders to collect post-payment interest, it has imposed strict limitations on the lender's ability to do so. HUD prohibits lenders from collecting post-payment interest unless the lender complies with HUD regulations. And HUD regulations require the lender to provide the borrower with a disclosure form approved by HUD.

25.     The limitations on post-payment interest are reflected in a uniform provision of the note, which again must be included in the note for every FHA-insured loan:

5.     BORROWER'S RIGHT TO PREPAY

> **Borrower has the right to pay the debt** evidenced by this Note, in whole or in part, **without charge or penalty, on the first day of any month**. Lender shall accept prepayment **on other days** provided that **Borrower pays interest** on the amount prepaid for the remainder of the month **to the extent required by Lender and permitted by regulations of the Secretary**. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the

monthly payment unless Lender agrees in writing to those changes.

Multistate – FHA Fixed Rate Note, USFHA.NTE (emphasis altered) at 2.[1]

26.     Under this provision, the borrower has the right to prepay the full unpaid principal without charge or penalty on the **first** of the month.  The borrower also has the right to prepay the full unpaid principal on days **other than** the first; provided however that, in such cases, the lender can collect post-payment interest for the remainder of that month **if the lender complies with FHA regulations**.

27.     The relevant FHA regulation is titled "Handling Prepayments" and provides that:

> (a) Notwithstanding the terms of the mortgage, the [lender] may accept a prepayment at any time and in any amount.  **Except as set out below, monthly interest on the debt must be calculated on the actual unpaid principal balance** of the loan.
> . . .
> (c) If the prepayment is offered on other than an installment due date [the first of the month], the [lender] may refuse to accept the prepayment until the next installment due date (the first day of the month), or may require payment of interest to that date, **but only if the [lender] so advises the [borrower], in a form approved by the Commissioner**, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment.
> . . .
> (e) If the [lender] **fails to meet the full disclosure requirements of paragraphs (b) and (c) of this section, the [lender] may be subject to forfeiture** of that portion of interest collected for the period beyond the date that prepayment in full was received and to such other actions as are provided in part 25 of this title.

24 C.F.R. § 203.558 (2014) (emphasis added).

28.     Under this regulation, if payment of the full unpaid principal is made on a day other than the first of the month, and the lender provides the borrower the FHA-approved form, then, and only then, can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

29.     For the convenience of lenders, for mortgages insured on or after August 2, 1985 and through January 20, 2015, HUD provided an approved form as Appendix 8 (C) to the HUD Housing Handbook:

---

[1] Plaintiff's note is a fixed rate note, and for FHA fixed rate notes, the uniform provision regarding the borrower's right to prepay is located at section 5.  For FHA adjustable rate notes, the same uniform provision regarding the borrower's right to prepay is located at section 6.  There is no difference in the relevant language.

MORTGAGEE NOTICE TO MORTGAGOR
(In response to prepayment inquiry, request for payoff or tender of prepayment in full)

Mortgagor: _____     Date: _____
Address: _____     Loan #: _____
_____     FHA#: _____

   This is in reply to your _____(date)_____ inquiry/request for payoff figures or offer to tender an amount to prepay in full your FHA-insured mortgage which this company is servicing.

   This notice is to advise you of the procedure which will be followed to accomplish a full prepayment of your mortgage.

   The _____(mortgagee name)_____ will:

  (a) [ ] accept the full prepayment amount whenever it is paid and collect interest only to the date of that payment; or

  (b) [ ] only accept the prepayment on the first day of any month during the mortgage term; or accept the prepayment whenever tendered with interest paid to the first day of the month following the date prepayment is received[.]

---

   NOTE: It is to your advantage to arrange closings so that the prepayment reaches us on or before (as close to the end of the month as possible) the first work day of the month.

   If you have any questions regarding this notice, please contact _____(name and/or department) ____at___(telephone number)____.


_____
Mortgagee

Attachment (Pay off Statement)

HUD Housing Handbook, 4330.1 REV-5 Appendix 8 (C) at 1-2.


  30. As HUD explains, "[t]he **basic disclosure** language is necessary because it pertains

to the [borrower's] rights under the mortgage." HUD Housing Handbook, Administration of Insured Home Mortgages, 4330.1 REV-5, Chapter 5-1 (C), at 2 (emphasis added).

31. HUD also confirms that the lender "**must disclose** the procedures that must be followed with respect to the payoff and **must explain** how the amount of the prepayment has been determined. **Otherwise, the [lender] must forfeit any interest collected after the date of prepayment**." *Id.* at 6. (emphasis added)

32. In May 2016, HUD Handbook 4000.1 went into effect, and reiterates the requirement that lenders must provide borrowers with an approved disclosure as a condition to charging post-payment interest.

33. For example, Handbook 4000.1 states that, "[w]hen notified of the Borrower's intent to prepay a Mortgage, the Mortgagee **must** send to the Borrower directly the **Payoff Disclosure** and copy of the payoff statement." The handbook also states "this option [*i.e.*, post-payment interest] may **only** be used **if the Mortgagee has provided the Payoff Disclosure to the Borrower**."

34. The Payoff Procedure Disclosure Form is found on HUD's forms webpage which is hyperlinked in the handbook.

35. Likewise, a Frequently Asked Questions page linked from and accessible through the HUD website contains the question "Is there a current Payoff Procedure Disclosure for FHA Loans?"

36. The answer to the FAQ is: "Yes, in response to a prepayment inquiry, request for payoff, or tender of prepayment in full, **mortgagees must use the Payoff Procedure Disclosure notice** provided on the Single Family Mortgages Model Documents webpage at: https://portal.hud.gov/hudportal/HUD?src=/program_offices/housing/sfh/model_documents The specific link is at: https://portal.hud.gov/hudportal/documents/huddoc?id=SFPayoffProcDisc.pdf"

37. In sum, pursuant to the uniform provisions of the note, HUD Handbooks, and HUD regulations, lenders cannot collect post-payment interest on FHA-insured loans unless (a) the borrower pays the full unpaid principal on a day **other than** the first of the month and (b) the lender has provided the borrower **the FHA-approved form**. If the lender satisfies both of those requirements, only then can the lender collect post-payment interest for the remainder of the month in which payment of the full unpaid principal was made.

**C.    Lenders Have Collected Billions Of Dollars In Post-Payment Interest On FHA-**

**Insured Loans.**

38.     From August 2, 1985 through January 20, 2015, lenders including Wells Fargo have collected billions of dollars in post-payment interest.

39.     The National Association of Realtors estimates that "more than 40 percent of FHA borrowers close during the first 10 days of the month, exposing them to at least 20 days of interest payments."  Kenneth R. Harney, *Interest Costs Don't End With Payoff Of FHA Loan*, Chicago Tribune,        Apr.        11,        2004,        http://articles.chicagotribune.com/2004-04-11/business/0404110057_1_fha-loan-ginnie-mae-fha-borrowers.  The NAR further "estimate[s] that during 2003, . . . FHA customers who terminated their loans paid an average of $528 in 'excess interest fees,' a cumulative 'prepayment penalty' to those borrowers of **$587 million**."  *Id.* (emphasis added).

40.     "HUD doesn't get the interest, lenders do.  In effect, **lenders are getting interest for money that isn't outstanding**.  This may not sound like a big deal, but according to HUD, such post-payment interest charges cost borrowers **$449 million** in 2012."  Peter Millar, *The Very New Deal: How FHA Mortgages Are Changing For 2015*, The Simple Dollar, Jan. 9, 2015, http://www.thesimpledollar.com/the-very-new-deal-how-fha-mortgages-are-changing-in-2015/ (emphasis added).

41.     "This practice . . . has cost consumers staggering amounts, with estimates ranging into the **hundreds of millions of dollars a year** during periods when mortgage rates were high."  Kenneth R. Harney, *FHA Will Stop Lenders From Charging Extra Interest When Homeowners Sell     or     Refinance*,     Washington     Post,     Sep.     5,     2014, https://www.washingtonpost.com/realestate/fha-will-stop-lenders-from-charging-extra-interest-when-homeowners-sell-or-refinance/2014/09/04/478a2a04-32a6-11e4-8f02-03c644b2d7d0_story.html (emphasis added).

42.     "[T]he clear loser in the full-month interest policy **is 'the one who can least afford it, the consumer**.'"  Harney, Chicago Tribune, Apr. 11, 2004 (emphasis added).  "**Hundreds of thousands of home sellers have had their pockets picked** at closings during the past decade: They've been charged interest on their mortgages after their principal debts had been fully paid off."  Harney, Washington Post, Sep. 5, 2014 (emphasis added).

43.     Meanwhile, "**the true beneficiaries** of the long-standing practice were [the lenders], who could earn interest on the 'float' – the money they collected from borrowers and had

free use of until the end of the month, when they had to disburse final interest payments to bond investors." Kenneth R. Harney, *Controversial FHA Payoff Rule to End*, Los Angeles Times, Mar. 30, 2014, http://articles.latimes.com/2014/mar/30/business/la-fi-harney-20140330 (emphasis added).

44. All of the relevant government agencies now agree that collecting post-payment interest is an unfair prepayment penalty and is against public policy.

45. On August 26, 2009, the Board of Governors of the Federal Reserve System proposed a rule "to amend Regulation Z, which implements the Truth in Lending Act (TILA)," which regulates prepayment penalties. 74 Fed. Reg. 43232, 43232 (Aug. 26, 2009). The Board stated that "[o]ne such example [of a prepayment penalty] is 'interest charges for any period after prepayment in full is made.' **When the loan is prepaid in full, there is no balance to which the creditor may apply the interest rate**." *Id.* at 43257 (emphasis added).

46. On January 30, 2013, the Consumer Financial Protection Bureau issued a final version of its rule titled "Ability-to-Repay and Qualified Mortgage Standards under the Truth in Lending Act (Regulation Z)." *See* 78 Fed. Reg. 6408, 6408 (Jan. 30, 2013). Regulation Z broadly defines "prepayment penalty" as the "charge imposed for paying all or part of the transaction's principal balance before the date on which the principal is due." *Id.* at 6444.

47. This definition includes "charges resulting from FHA's monthly interest accrual amortization method." 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014). As CFPB explains:

> [I]t is appropriate to designate higher interest charges for consumers based on accrual methods that treat a loan balance as outstanding for a period of time after prepayment in full as prepayment penalties . . . . In such instances, **the consumer submits a payment before it is due, but the creditor nonetheless charges interest on the portion of the principal that the creditor has already received**. The Bureau believes that charging a consumer interest after the consumer has repaid the principal is the functional equivalent of a prepayment penalty.

78 Fed. Reg. 6408, 6445 (Jan. 30, 2013) (emphasis added).

48. Based on Regulation Z's definition, charges for post-payment interest are now subject to the Truth in Lending Act. *See* 79 Fed. Reg. 50835, 50835 (Aug. 26, 2014); 75 Fed. Reg. 58539, 58586 (Sep. 24, 2010) ("[T]he Board believes that the charging of interest for the remainder of the month in which prepayment in full is made should be treated as a prepayment penalty for TILA purposes, even when done pursuant to the monthly interest accrual amortization method.").

49. In response to those changes by FRB and CFPB, on March 13, 2014, "HUD

published a proposed rule in the Federal Register, at 79 FR 14200, to eliminate post-payment interest charges to borrowers resulting from FHA's monthly interest accrual amortization method for calculating interest." 79 Fed. Reg. 50835, 50835. And, on August 26, 2014, HUD issued a final version of its rule titled "Federal Housing Administration (FHA): Handling Prepayments: Eliminating Post-Payment Interest Charges." *Id.*

50. Under the new regulation, "[w]ith respect to FHA-insured mortgages closed on or after January 21, 2015, notwithstanding the terms of the mortgage, the [lender] shall accept a prepayment at any time and in any amount." 24 C.F.R. § 203.558 (a). "Monthly interest on the debt must be calculated on the actual unpaid principal balance of the loan as of the date the prepayment is received, and not as of the next installment due date." *Id.*

51. Although CFPB, FRB, and HUD have now all prohibited post-payment interest charges for FHA-insured mortgages closed on or after January 21, 2015, they **did not** make this change retroactive. "[T]he estimated **7.8 million existing FHA mortgage borrowers** who are not covered by the forthcoming policy change **will continue to be vulnerable** to paying more than they should." Harney, Los Angeles Times, Mar. 30, 2014 (emphasis added).

**D. Wells Fargo Did Not Provide An FHA-Approved Form To Plaintiffs Before Collecting Post-Payment Interest.**

52. Wells Fargo was the holder of Plaintiff Fowler's loan secured by her home in Victorville, California. Plaintiff Fowler's loan was insured by the FHA, and so Wells Fargo is required to comply with the HUD Handbook and HUD regulations with respect to her loan.

53. Pursuant to HUD regulations, Plaintiff Fowler's promissory note contains certain uniform provisions found in the note for every FHA-insured loan. These uniform provisions include, among others, section 2 titled "Borrower's Promise to Pay; Interest" and section 5 titled "Borrower's Right to Prepay." *See* Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1-2.

///

54. In 2013, Plaintiff Fowler refinanced her home. So that she could pay off her loan with Wells Fargo, Plaintiff Fowler requested that Wells Fargo provide her with a payoff statement. Wells Fargo provided a payoff statement dated October 18, 2013.[2] The statement is a form

---

[2] This is the only payoff statement currently in Plaintiff Fowler's possession, but she does not deny additional payoff statements in the same form may exist and have been sent to her by Wells Fargo.

document, in which Wells Fargo uses form language throughout the document and fills in only the particular numbers and address information that correspond to a specific borrower.

55. The form includes the statements "TOTAL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER NOTE / SECURITY INSTRUMENT"; "Unpaid Principal Balance $ "; "Interest as of "; and "TOTAL AMOUNT DUE through  $ ." *Id.* at 2.

56. The statement contains the following specific numbers for Fowler's loan: "Unpaid Principal Balance $154,907.90"; "**Interest as of 11-01-13 [$] 1,065.00**"; "TOTAL CONTRACTUAL AND OTHER FEES AND CHARGES DUE $28.00"; and "TOTAL AMOUNT DUE through 09-01-13 $ 156,341.33." *Id.* (emphasis added).

57. Plaintiff Fowler's interest payments were $532.50 per month. Thus, by representing that Plaintiff Fowler owed $1,065.00 in interest, Wells Fargo charged and sought to collect interest for **two months** – interest for the entire month of September 2013 and interest for the entire month of October 2013, even though the payoff statement was issued on October 18, 2013. *Id.*

58. Wells Fargo has an admitted policy of charging post-payment interest on all FHA-insured loans such as Plaintiff Fowler's loan.

59. On or about November 25, 2013, Plaintiff Fowler paid Wells Fargo $156,147.18, which includes the interest Wells Fargo represented it was owed. And because Wells Fargo required Plaintiff Fowler to pay interest for the entire month of November 2013 – even though Plaintiff Fowler paid the full unpaid principal by November 25, 2013 – Wells Fargo collected post-payment interest.

60. Likewise, in February 2017, Plaintiff Peters refinanced his home. So that he could pay off his loan with Wells Fargo, Plaintiff Peters requested that Wells Fargo provide him with a payoff statement. Wells Fargo provided a payoff statement dated January 30, 2017. The statement is in the same provided to Plaintiff Fowler and other class members.

61. The statement contains the following specific numbers for Plaintiff Peters' loan: "Unpaid Principal Balance $123,760.18"; "**Interest as of 03-01-17 [$] 1,031.34**"; "TOTAL CONTRACTUAL AND OTHER FEES AND CHARGES DUE $11.00"; and "TOTAL AMOUNT DUE through 03-01-17 $ 124,970.85." *Id.* (emphasis added).

62. Plaintiff Peters' interest payments were $515.67 per month. Thus, by representing that Plaintiff Peters owed $1,031.34 in interest, Wells Fargo charged and sought to collect interest

for the entire month of February 2017, even though the loan was paid off by February 21, 2017. *Id.*

63. On or about February 21, 2017, Plaintiff Peters paid Wells Fargo $124,970.85, which includes the interest Wells Fargo represented it was owed. And because Wells Fargo required Plaintiff Peters to pay interest for the entire month of February 2017 – even though Plaintiff Peters paid the full unpaid principal by February 21, 2017 – Wells Fargo collected post-payment interest.

64. However, Wells Fargo did not first provide Plaintiff Peters with the disclosure in Appendix 8(c), the Payoff Disclosure, or any other HUD-approved form. For one, the form used by Wells Fargo is not a HUD-approved form, nor does it include all of the essential elements of the Payoff Disclosure, and FHA or HUD approval is an **express** requirement of HUD regulations.

65. HUD's approved forms included with its handbooks are designed to be consumer-friendly.

66. Appendix 8(c) to HUD Handbook 4330.1 rev-1 is nearly a page long, has a capitalized title (MORTGAGE NOTICE TO MORTGAGOR (In response to prepayment inquiry, request for payoff or tender of prepayment in full), two easy-to-read, distinct paragraphs labeled (a) and (b), with options for how interest will be charged, along with boxes for the lender to check the applicable option, and a place for the lender to sign at the bottom, emphasizing the significance of the document to borrowers.

67. Similarly the disclosure form appended to HUD Handbook 4000.1 is nearly a full page long, has a capitalized title (PAYOFF PROCEDURE DISCLOSURE), two easy-to-read distinct paragraphs with boxes for the lender to check the applicable option, and a place for the lender to sign at the bottom.

68. Wells Fargo's unapproved form is nothing like Appendix 8(c) or the Payoff Procedure Disclosure Form.

69. Wells Fargo's unapproved form does not have a title relating to post-payment interest, separate paragraphs, check-boxes, or anywhere for the lender to sign; instead, Wells Fargo's form squeezes two sentences about post-payment interest into a single confusing paragraph.

70. Moreover, the language that Wells Fargo uses is different from HUD's approved disclosures and is both misleading and confusing. The relevant language consists of two sentences.

The first sentence tells Plaintiffs that "[w]e **will** collect interest through the end of the month in which we receive the payoff funds." *Id.* at 1 (emphasis added). Because this language is unconditional, Wells Fargo wrongly tells Plaintiffs that, even if payment is made on the first of the month, Wells Fargo "**will**" collect interest through the end month of that month – which both the uniform provisions of the note and FHA regulations prohibit Wells Fargo from doing. *See* Multistate – FHA Fixed Rate Note, USFHA.NTE at 2 ("Borrower has the right to pay the debt . . . without charge or penalty, on the first day of any month."); 24 C.F.R. § 203.558 (c) (2014).

71.     The second sentence further reinforces the misleading and confusing nature of the first sentence. It tells borrowers that, "[t]o avoid paying an **extra month** of interest, it is to your advantage to arrange closing so the payoff funds reach us on or before the first business day of the month." Because this language follows the first sentence – "[w]e will collect interest through the end of the month" – Wells Fargo wrongly tells borrowers that, no matter what they have to pay interest through the end of the month in which payment is received, and only addresses how to avoid payment of interest for an "**extra month**." In other words, Wells Fargo only addresses how to avoid a second month of post-payment interest.

72.     The effect of Wells Fargo's illegal collection of post-payment interest is that Plaintiffs and Class members were charged interest twice – by Wells Fargo and their new lender – for the period between the date of closing and the end of the month.

### Class Action Allegations

73.     Plaintiffs assert claims on behalf of themselves and a class of similarly-situated persons pursuant to Federal Rule 23.

74.     Plaintiffs propose the following class:

the collective group of all persons nationwide who had an FHA-Insured Loan that was originated beginning June 1, 1996 and ending January 20, 2015, where (i) Wells Fargo, its agent, or its predecessor was the mortgagee as of the date the total amount due on the FHA-Insured Loan was brought to zero, (ii) Wells Fargo collected Post-Payment Interest on the FHA-Insured Loan during the applicable Limitations Period, and (iii) the borrower made a prepayment inquiry, request for payoff figures, or tender of prepayment but did not receive a Payoff Statement containing the verbatim Post-Payment Interest disclosure language in Housing Handbook, 4330.1 REV-5 Appendix 8(c) or the verbatim language contained in the "Payoff Disclosure" referenced in the Housing Handbook 4000.1. Excluded from the Class are Wells Fargo, all officers, directors, and employees of Wells Fargo, and their legal representatives, heirs, or assigns, and any Judges to whom the Action is assigned, their staffs, and their immediate families.

75. Plaintiffs reserve the right to revise this class definition.

76. Plaintiffs propose certification of all issues, while reserving the right to alternatively seek certification as to any specific claim or issue.

77. Plaintiffs would serve as the class representatives.

78. Plaintiffs satisfy the requirements of Federal Rule 23:

a. <u>Numerosity</u> – The class is so numerous that joinder is impracticable. The FHA is the largest insurer of mortgages in the world, currently insuring around 4.8 million single family homes. And, in just one month in 2015, Wells Fargo originated over 2,600 FHA-insured loans. Plaintiffs estimate that the class consists of tens of thousands of persons.

b. <u>Commonality</u> – There are numerous common questions of law and fact, including but not limited to the following:

i. Whether, before collecting post-payment interest, Wells Fargo complied with the contractual and regulatory requirements that it provide the borrowers with an approved disclosure.

ii. Whether and when Wells Fargo knew that it failed to make required disclosures relating to post-payment interest.

iii. Whether Wells Fargo breached the note with respect to the collection of post-payment interest.

iv. Whether Plaintiffs and Class members are entitled to restitution or damages.

v. Whether Plaintiffs and Class members are entitled to equitable relief and if so, the nature of the relief.

c. <u>Typicality</u> – Plaintiffs' claims are typical of the classes' claims. Plaintiffs' promissory notes are not just typical of the rest of the class, but are identical with respect to relevant provisions at issue in this case. Further, because Wells Fargo uses form payoff statements, Plaintiffs have been subject to conduct that is typical of the rest of the class. Wells Fargo has sought to collect post-payment interest from Plaintiffs in the same manner that it has sought to collect post-payment interest from the rest of the class.

d. <u>Adequacy</u> – Plaintiffs would adequately protect the class's interests. Plaintiffs have a genuine interest in protecting the rights of the class and Plaintiffs' counsel are experienced in handling complex class actions. Indeed, Plaintiffs' counsel has been designated and approved as class counsel in numerous state and federal courts. Further, because Plaintiffs challenge form payoff statements used by Wells Fargo, the interests of Plaintiffs and the class are aligned.

e. <u>Predominance</u> – The answers to the common questions in this case will decide liability for the entire class. If Plaintiffs establish that Wells Fargo's practice of collecting post-payment interest without making the approved disclosure required under the note and HUD regulations breached the contract, it will establish liability for all Class members, without the need for any additional proof as to liability. Thus, common issues predominate over individual issues.

f. <u>Superiority</u> – A class action is superior to other available remedies. The common questions would predominate over any individual questions, and thus no other form of litigation could be superior to a class action. Further, because of the low dollar amounts at stake for each class member, a class action is the only way for Plaintiffs and other Class members to obtain redress. Moreover, the most efficient way to resolve the class's claims is for a court to decide all claims in a single class. Requiring tens of thousands of Class members to individually litigate their claims over and over again in various courts would be vastly inefficient. It also raises the possibility of inconsistent judgments or conflicting declaratory and injunctive relief.

## **FIRST CAUSE OF ACTION**

**(Breach of Contract**

**On Behalf of all Plaintiffs and Class Members)**

79. Plaintiffs incorporate by reference the allegations contained in all preceding paragraphs of this Complaint.

80. Plaintiffs had a contract with Wells Fargo. The terms of the contract are set forth in the promissory note between Plaintiff and Wells Fargo. The note is a form contract containing

certain provisions that are identical to provisions found in the promissory notes for every FHA-insured loan.

81.    In Section 2 of the note, titled "BORROWER'S PROMISE TO PAY; INTEREST," Wells Fargo agreed that "[i]nterest will be charged on unpaid principal" and only "until the full amount of the principal has been paid."  Multistate – FHA Fixed Rate Note, USFHA.NTE, at 1.

82.    In section 5 of the note, titled "BORROWER'S RIGHT TO PREPAY," Wells Fargo agreed that it would charge "interest on the amount prepaid for the remainder of the month" only "to the extent . . . permitted by regulations of the Secretary."  Id. at 2.

83.    And the relevant FHA regulation, titled "Handling Prepayments," provides that, "[e]xcept as set out [in this regulation], monthly interest on debt must be calculated on the actual unpaid principal balance of the loan."  24 C.F.R. § 203.558 (2014).   "If the prepayment is offered on other than an installment due date [the first of the month], the [lender] . . . may require payment of interest to that date, but only if [the lender] so advises the [borrower], in a form approved by the Commissioner, in response to the [borrower's] inquiry, request for payoff figures, or tender of prepayment."  Id.

84.    In addition to the express terms of the promissory note between Plaintiffs and Wells Fargo, the law also implies a duty of good faith and fair dealing in every contract, and Wells Fargo is subject to this duty as well.

85.    Wells Fargo breached the contract, including the duty of good faith and fair dealing, by collecting post-closing interest payments from Plaintiffs without first providing them with FHA-approved notice in response to their inquiry, request for payoff figures, or tender of prepayment.

86.    Plaintiffs were damaged by Wells Fargo's breach, and seek damages for Wells Fargo's improper collection of post-closing interest payments.  Plaintiffs seek damages for interest collected for the period beyond the date Wells Fargo received full repayment of the unpaid principal.

## **Relief Requested**

Plaintiffs ask this Court to:

  a.  certify this action as a class action, including certifying Plaintiffs as class representative and undersigned counsel as class counsel;

b.    award Plaintiffs and the Class any damages they are entitled to, including but not limited to statutory damages and penalties, attorney fees, pre-judgment interest, post-judgment interest, and costs;

c.    enjoin Wells Fargo from continuing the unlawful practices set forth here;

d.    and order any other relief as the Court may deem proper and just.

Respectfully submitted this 28th day of June, 2018.

*/s/ Adam L. Hoipkemier*
Adam L. Hoipkemier (Ga. Bar No. 745811)
Kevin E. Epps (Ga. Bar No. 785511)
(appearing *pro hac vice*)

Epps Holloway DeLoach & Hoipkemier LLC
1220 Langford Drive, Bldg. 200
Watkinsville, GA 30677
Telephone: 706 508 4000
Facsimile:  706 842 6750

Robins Kaplan LLP
Michael F. Ram (SBN 104805)
mram@robinskaplan.com
Susan S. Brown (SBN #287986)
sbrown@robinskaplan.com
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone:  650 784 4040
Facsimile:   650 784 4041

Turke & Strauss LLP
Sam Strauss (WIBN 46971)
613 Williamson Street, Suite 209
Madison, Wisconsin 53703-3515
Telephone: 608 237 1774
Facsimile: 608 509 4423
Email: sam@turkestrauss.com

*Attorneys for Plaintiff and Proposed Class*