UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANA FOWLER,<br><br>        Plaintiff,<br><br>   v.<br><br>WELLS FARGO BANK, N.A.,<br><br>        Defendant. | Case No. 17-cv-02092-HSG<br><br>**ORDER GRANTING PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Re: Dkt. No. 80 |

Pending before the Court is the unopposed motion for preliminary approval of class action settlement filed by Plaintiffs Vana Fowler and Michael Peters, individually and on behalf of the settlement class as defined herein. Dkt. No. 80. The parties have reached a settlement regarding Plaintiffs' claims and now seek the required court approval. For the reasons set forth below, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement.

**I. BACKGROUND**

**A. Factual Background**

Plaintiffs allege that Wells Fargo unlawfully and unfairly collected post-payment interest on mortgages insured by the Federal Housing Administration ("FHA")—part of the Department of Housing and Urban Development ("HUD")—by failing to provide proper notice to borrowers. *See* Dkt. No. 81 ("FAC").

Under HUD regulation 24 C.F.R. § 203.558, banks may collect interest after a borrower repays the full principal on his or her FHA-insured loan if the borrower's repayment is made after the first of the month. *See* 24 C.F.R. § 203.558(c) (2014).[1] Accordingly, banks may collect

---

[1] Plaintiffs' proposed class period runs from June 1, 1996, through January 20, 2015. *See* FAC ¶ 74. Consequently, the earlier 2014 version of the statute, current through January 20, 2015, applies.

interest from the date the loan is paid off through the end of the month. *Id.* However, the statute specifies that before banks may collect this post-payment interest, they must provide notice to borrowers with "a form approved by the [FHA] Commissioner." *See* 24 C.F.R. § 203.558. Plaintiffs assert that these HUD regulations are also incorporated into the banks' promissory notes with borrowers. FAC ¶ 80.

Here, Plaintiffs allege that Defendant collected post-payment interest on their loans. *See* FAC ¶¶ 8–9, 85. Plaintiffs assert that Defendant did not provide them with the proper notice and instead used its own unauthorized form that "does not fairly disclose the terms under which [Defendant] can collect post-payment interest or properly explain how borrowers can avoid such charges." FAC ¶ 6. According to Plaintiffs, Defendant's form suggests that borrowers cannot avoid paying post-payment interest through the end of the month. *Id.* ¶ 70. Plaintiffs state that as a result, they were charged interest twice—both by Defendant and by their new lenders after refinancing. Plaintiffs seek any applicable damages on behalf of a class of nationwide borrowers. *Id.* ¶ 74, Relief Requested.

### B. Settlement Agreement

Following extensive formal discovery and with the assistance of a mediator, the parties entered into a settlement agreement. Dkt. No. 80 at 3; Dkt. No. 80-6 ¶ 3; Dkt. No. 80-1 ("SA"). The key terms are as follows:

Class Definition: The Class is defined as the nationwide group, excluding Wells Fargo employees and Judges and staff to whom this action is assigned, "who had an FHA Insured Loan that was originated beginning June 1, 1996 and ending January 20, 2015, where (i) Wells Fargo, its agent, or its predecessor was the mortgagee as of the date the total amount due on the FHA-Insured Loan was brought to zero, (ii) Wells Fargo collected Post-Payment Interest on the FHA-Insured Loan during the applicable Limitations Period, and (iii) the borrower made a prepayment inquiry, request for payoff figures, or tender of prepayment but did not receive a Payoff Statement containing the verbatim Post-Payment Interest disclosure language in [the] Housing Handbook." SA ¶ 1.5.

Settlement Benefits: The Net Settlement Fund will consist of $30,000,000, minus the costs

2

of settlement administration, incentive awards, and attorneys' fees and expenses. SA ¶¶ 1.36, 5.2.1. Each settlement class member will receive a refund of a percentage of the Net Settlement Fund proportional to the amount of post-payment interest collected in connection with that member's loan as compared to all other class members' post-payment interest. SA ¶ 5.2.1.

Release: All settlement class members will release:

> any and all claims, defenses, demands, objections, actions, causes of action, rights, offsets, setoffs, suits, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever, in law or in equity, for any relief whatsoever, including monetary, sanctions or damage for contempt, injunctive, or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, penalties, interest, attorneys' fees, costs, or expenses, whether a known or Unknown Claim, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, arise out of, or relate to allegations that were or could have been asserted in the Class Action Complaint related to Post-Payment Interest on each Class Member's FHA-Insured Loan. It is the intention of the Class Representatives to provide a general release of all Released Claims against the Releasees for claims related to Post-Payment Interest.

SA ¶ 1.28.

Class Notice: A third-party settlement administrator will send class notices via U.S. mail to each member of the class, using a class list provided by Defendant. SA ¶¶ 7.2, 7.3. The notice will include: the nature of the action, a summary of the settlement terms, and instructions on how to object to and opt out of the settlement, including relevant deadlines. SA ¶¶ 7.1–7.7, Exs. 1, 2.

Opt-Out Procedure: The parties propose that any putative class member who does not wish to participate in the settlement must sign and postmark a written request for exclusion to the settlement administrator no later than 30 days before the hearing on the motion for final settlement approval. SA ¶¶ 11.1; 1.22.

Incentive Award: Plaintiff Fowler will apply for an incentive award of no more than $7,500 and Plaintiff Peters will apply for an incentive award of no more than $5,000. SA ¶ 15.3.

Attorneys' Fees and Costs: Plaintiffs will file an application for attorneys' fees not to exceed 25% of the settlement fund, and costs not to exceed $70,000 . SA ¶¶ 15.1–15.2.

## II. PROVISIONAL CLASS CERTIFICATION

The Court first considers whether provisional class certification is appropriate because it is a prerequisite to preliminary approval of a class action settlement.

### A. Legal Standard

Plaintiffs bear the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–351 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *Id.* at 349. Second, she must establish that at least one of the bases for certification under Rule 23(b) is met. Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), she must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### B. Analysis

To determine whether provisional certification is appropriate, the Court considers whether the requirements of Rule 23(a) and Rule 23(b)(3) have been met. As discussed in more detail below, the Court finds those requirements have been met in this case.

#### i. Rule 23(a) Certification

##### a. Numerosity

Rule 23(a)(1) requires that the putative class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Court finds that numerosity is satisfied here because joinder of the estimated 1,000,000 class members would be impracticable. *See* Dkt. No. 80 at 8.

##### b. Commonality

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A contention is sufficiently common where "it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is

central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S at 350. Commonality exists where "the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978–79 (9th Cir. 2008). "What matters to class certification . . . is not the raising of common 'questions'―even in droves—but rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Dukes*, 564 U.S at 350. Even a single common question is sufficient to meet this requirement. *Id.* at 359.

Common questions of law and fact in this action include: whether the promissory notes of the settlement class members prohibit the collection of post-payment interest except as permitted by HUD regulations; whether the relevant HUD regulations require Defendant to provide certain disclosures related to post-payment interest; and whether certain uniform disclosures made by Defendant complied with 24 C.F.R. § 203.558. Dkt. No 80 at 8–9. Accordingly, the Court finds that the commonality requirement is met in this case.

### c. Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks omitted). That said, under the "permissive standards" of Rule 23(a)(3), the claims "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiffs' claims are both factually and legally similar to those of the putative class because Defendant's alleged actions involve a form contract that affects Plaintiffs and all settlement class members in the same way. Dkt. No. 80 at 9–10. Plaintiffs have not alleged any individual claims. This is sufficient to satisfy the typicality requirement.

### d. Adequacy of Representation

Rule 23(a)(4) requires that the "representative parties will fairly and adequately represent

5

the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must address two legal questions: (1) whether the named Plaintiffs and their counsel have any conflicts of interest with other class members, and (2) whether the named Plaintiffs and their counsel will prosecute the action vigorously on behalf of the class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000). This inquiry "tend[s] to merge" with the commonality and typicality criteria. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). In part, these requirements determine whether "the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.*

The Court is unaware of any actual conflicts of interest in this matter and no evidence in the record suggests that either Plaintiffs or proposed class counsel have a conflict with other class members. Dkt. No. 80 at 10. Plaintiffs' counsel has been appointed class counsel in multiple federal class actions. Dkt. No. 80-6 ¶¶ 7–8; Dkt. No. 80-7 ¶ 5. The Court finds that proposed class counsel and Plaintiffs have prosecuted this action vigorously on behalf of the class to date, and will continue to do so. The adequacy of representation requirement is therefore satisfied.

### ii. Rule 23(b)(3) Certification

To certify a class, Plaintiffs must also satisfy the two requirements of Rule 23(b)(3). First, "questions of law or fact common to class members [must] predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). And second, "a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*. The Court finds that both are met in this case.

#### a. Predominance

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (internal quotation marks omitted). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member . . . ." *Id.* (internal quotation marks omitted). A common question, on the other hand, "is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (internal quotation marks omitted).

6

Here, the Court finds for purposes of settlement that the common questions raised by Plaintiffs' claims predominate over questions affecting only individual members of the proposed class. Plaintiffs allege that Defendant collected post-payment interest without proper disclosure in the same way as to all class members through the same set of actions and decisions. *See* FAC ¶¶ 79–86.

1. Multistate Law Analysis[2]

Plaintiffs allege state law breach of contract claims under the state laws of each of the represented states. Dkt. No. 80 at 12–13. Therefore, the Court need not choose one state's law to apply to the entire class. But the application of the laws of 50 different states to Defendant's alleged violations does potentially weigh against a finding of predominance, as variations in state law could individualize the questions that otherwise would have been common among the class members. Plaintiffs contend that the relevant contract law in each state applies identically to the alleged breach. *See* Dkt. No. 80-3. Specifically, each state evaluates three elements in a breach of contract claim: (1) the existence of a valid contract; (2) breach, and; (3) damages resulting from the breach. *Id*. For the purposes of settlement, given the high-level similarities in the law of each state as to the asserted claims, and because Defendant's procedures were uniform as to all class members, the Court finds the predominance requirement is satisfied for purposes of provisional class certification.

**b. Superiority**

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any

---

[2] The most recent guidance from the Ninth Circuit, which held that when evaluating certification in a putative multi-state class action, a federal court must "undertake a choice of law analysis" even in the context of preliminary settlement approval, is pending rehearing en banc. *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 702 (9th Cir. 2018), *reh'g en banc granted sub nom. In re Hyundai And Kia Fuel Econ. Litig.*, No. 15-56014, 2018 WL 3597310 (9th Cir. July 27, 2018). Nonetheless, the Court will consider the issue preliminarily at this stage, and may undertake further analysis at the final approval stage depending on developments in *In re Hyundai*.

litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

Here, because common legal and factual questions predominate over individual ones, and taking into account the large size of the proposed class, the Court finds that the judicial economy achieved through common adjudication renders class action a superior method for adjudicating the claims of the proposed class.

### iii. Class Representative and Class Counsel

Because the Court finds that Plaintiffs meet the commonality, typicality, and adequacy requirements of Rule 23(a), the Court appoints Plaintiffs as class representatives. When a court certifies a class, it must also appoint class counsel. Fed. R. Civ. P. 23(c)(1)(B). Factors that courts should consider when making that decision include:

(i) the work counsel has done in identifying or investigating potential claims in the action;
(ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
(iii) counsel's knowledge of the applicable law; and
(iv) the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A).

In light of Plaintiffs' counsel's extensive experience litigating class actions in federal court, Dkt. No. 80-6 ¶¶ 7–8; Dkt. No. 80-7 ¶ 5, and their diligence in prosecuting this action to date, the Court appoints Epps Holloway DeLoach & Hoipkemier LLC, Robins Kaplan LLP, and Turke & Strauss LLP as class counsel.

## III. PRELIMINARY SETTLEMENT APPROVAL

### A. Legal Standard

Federal Rule of Civil Procedure 23(e) provides that "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement— may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re*

*Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). Accordingly, before a district court approves a class action settlement, it must conclude that the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

Where the parties reach a class action settlement prior to class certification, district courts apply "a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted). In those situations, courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

Courts may preliminarily approve a settlement and direct notice to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not grant improper preferential treatment to class representatives or other segments of the class; and (4) falls within the range of possible approval. *See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). Courts lack the authority, however, to "delete, modify or substitute certain provisions. The settlement must stand or fall in its entirety." *Hanlon*, 150 F.3d at 1026.

**B. Analysis**

**i. Settlement Process**

The first factor the Court considers is the means by which the parties settled the action. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

Here, class counsel believes, based on significant discovery, that the settlement is fair, adequate, and reasonable. Dkt. No. 80-6 ¶¶ 3–4, 9. The Court consequently finds that this factor weighs in favor of preliminary approval.

**ii. Preferential Treatment**

The Court next considers whether the settlement agreement provides preferential treatment

9

to any class member.  The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth.*, 654 F.3d at 947.  For that reason, courts in this district have consistently stated that preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grant[s] preferential treatment to class representatives." *Tableware*, 484 F. Supp. 2d at 1079.

Although the Settlement Agreement authorizes each Named Plaintiff to seek incentive awards of no more than $7,500 and $5,000, respectively, for their roles as named plaintiffs in this lawsuit, *see* SA ¶ 15.3, the Court will ultimately determine whether each Named Plaintiff is entitled to such an award and the reasonableness of the amounts requested.  Incentive awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).  Plaintiffs must provide sufficient evidence to allow the Court to evaluate each Named Plaintiff's award "individually, using relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Stanton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (internal quotation marks omitted).  The Court will consider the evidence presented at the final fairness hearing and evaluate the reasonableness of any incentive award request.  Nevertheless, because incentive awards are not per se unreasonable, the Court finds that this factor still weighs in favor of preliminary approval.  *See Rodriguez*, 563 F.3d at 958 (finding that "[i]ncentive awards are fairly typical in class action cases" and "are discretionary") (emphasis omitted).

### iii. Settlement within Range of Possible Approval

The third factor that the Court considers is whether the settlement is within the range of possible approval.  To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080.  This requires the Court to evaluate the strength of Plaintiffs' case.

Here, each individual class member's recovery will be proportional to that class member's claim relative to the other class members'. SA ¶ 5.2.1. The average (mean) amount available to a given class member (under the assumption that 1,000,000 individuals join the class) is approximately $19.50, and the total settlement amount constitutes approximately 11.2% of Plaintiffs' maximum possible recovery at trial. Dkt. No. 80-6 ¶ 4. There is substantial risk Plaintiffs would face in litigating the case given the nature of the asserted claims. Dkt. No. 80 at 17–18. Plaintiffs acknowledge, for example, that Plaintiffs and the class members would face risks in proceeding past the motion to dismiss phase, as well as in certifying a class because of individualized loan closing dates among the class members. *See id.* at 17. The Court finds that the settlement amount, given this risk, weighs in favor of granting preliminary approval.

####        iv.    Obvious Deficiencies

The fourth and final factor that the Court considers is whether there are obvious deficiencies in the settlement agreement. The Court finds no obvious deficiencies, and therefore finds that this factor weighs in favor of preliminary approval.

*       *       *

Having weighed the relevant factors, the Court preliminarily finds that the settlement agreement is fair, reasonable, and adequate, and **GRANTS** preliminary approval.

### IV.    MOTION FOR FINAL SETTLEMENT APROVAL AND ATTORNEYS' FEES

The Court **DIRECTS** the parties to include both a joint proposed order and a joint proposed judgment when submitting their motion for final approval.

### V.     PROPOSED CLASS NOTICE PLAN

For Rule 23(b)(3) class actions, "the court must direct notice to the class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

With respect to the content of the notice itself, the notice must clearly and concisely state in plain, easily understood language:

(i)    the nature of the action;
(ii)   the definition of the class certified;

11

    (iii)    the class claims, issues, or defenses;
    (iv)    that a class member may enter an appearance through an attorney if the member so desires;
    (v)    that the court will exclude from the class any member who requests exclusion;
    (vi)    the time and manner for requesting exclusion; and
    (vii)    the binding effect of a class judgment on members[.]

Fed. R. Civ. P. 23(c)(2)(B).

The Court finds that the proposed notice, SA, Exs. 1, 2, is the best practicable form of notice under the circumstances.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement. The parties are **DIRECTED** to meet and confer and stipulate to a schedule of dates for each event listed below, which shall be submitted to the Court within seven days of the date of this Order:

| Event | Date |
|---|---|
| Deadline for Settlement Administrator to mail notice to all putative class members | |
| Filing Deadline for attorneys' fees and costs motion | |
| Filing deadline for incentive payment motion | |
| Deadline for class members to opt-out or object to settlement and/or application for attorneys' fees and costs and incentive payment | |
| Filing deadline for final approval motion | |
| Final fairness hearing and hearing on motions | |

The parties are further **DIRECTED** to implement the proposed class notice plan.

**IT IS SO ORDERED.**

Dated: 8/22/2018

HAYWOOD S. GILLIAM, JR.
United States District Judge

12