Michael F. Ram (SBN 104805)
mram@robinskaplan.com
Susan S. Brown (SBN #287986)
sbrown@robinskaplan.com
ROBINS KAPLAN LLP
2440 West El Camino Real, Suite 100
Mountain View, CA 94040
Telephone: 650 784 4040
Facsimile: 650 784 4041

Kevin E. Epps (appearing *pro hac vice*)
kevin@ehdhlaw.com
Adam L. Hoipkemier (appearing *pro hac vice*)
adam@ehdhlaw.com
EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC
1220 Langford Drive, Bldg. 200
Watkinsville, GA 30677

Samuel Strauss (appearing *pro hac vice*)
sam@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson Street, Suite 209
Madison, Wisconsin 53703-3515

*Attorneys for Plaintiffs and the Settlement Class*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

VANA FOWLER and MICHAEL PETERS,

Plaintiffs,

v.

WELLS FARGO BANK, N.A.,

Defendant.

Case No. 4:17-CV-02092-HSG

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: December 20, 2018
Time: 2:00 p.m.
Place: Courtroom 2, 4th Floor

Judge: Hon. Haywood Gilliam, Jr.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ..... 1
MEMORANDUM OF POINTS AND AUTHORITIES ..... 1
I. INTRODUCTION ..... 1
II. BACKGROUND ..... 2
A. Brief Procedural History ..... 2
B. The Terms of the Settlement ..... 3
1. Class definition, release, and notice ..... 3
2. Settlement benefits ..... 4
3. Disbursement of funds ..... 4
4. Fees, costs, and service awards ..... 5
5. Settlement Administrator ..... 5
III. THE SETTLEMENT CLASS SHOULD BE CERTIFIED ..... 5
A. The Class Satisfies Rule 23(a) ..... 5
B. The Class Satisfies Rule 23(b)(3) ..... 6
IV. THE SETTLEMENT MERITS FINAL APPROVAL ..... 7
A. The Strength of Plaintiffs' Case, Risk of Further Litigation, and Risks of Maintaining Class Action Status ..... 7
B. The Amount Offered in Settlement is Reasonable ..... 9
C. The Parties Have Reached Settlement at an Appropriate Stage ..... 10
D. Experienced Counsel Favor the Settlement ..... 10
E. Governmental Participation ..... 10
F. The Reaction of Class Members is Positive ..... 11
G. Lack of Collusion ..... 11
V. DIRECT MAILED NOTICE TO THE CLASS SATISFIES RULE 23 ..... 11
CONCLUSION ..... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Airlines v. Wolens*, 513 U.S. 219 (1995) ....................7

*Audino v. JP Morgan Chase, N.A*, Case 4:16-cv-00631-SMR-HCA (S.D. Iowa, November 14, 2018) ....................2, 8

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004)....................7

*Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 U.S. Dist. LEXIS 89002, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) ....................9

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) ....................8

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992)....................11

*Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930 (N.D. Cal. 2016) ....................9

*Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030 (N.D. Cal. 2016) ....................7

*Decohen v. Abbasi, LLC*, 299 F.R.D. 469 (D. Md. 2014)....................2

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ....................11

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 881 F.3d 679 (9th Cir. 2018), *rehearing en banc granted*....................6

*Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 U.S. Dist. LEXIS 49477, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)....................8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)....................6

*In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. June 10, 2005 ....................11

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

*In re Linkedin User Privacy Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) ....................11

*In Re Med. Capital Secs. Litig.*,
No. SAML 10-2145 DOC (RNBx), 2011 U.S. Dist. LEXIS 126659, 2011 WL 5067208, at *3 (C.D. Cal. Jul. 26, 2011) ....................6

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)....................10

*In re Netflix Privacy Litig.*,
No. 11-CV-00379-EJD, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013)....................10

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................10, 11

*Miller v. Wells Fargo Bank, N.A.*,
No. 1:16-cv-21145-UU, 2017 WL 698520 (S.D. Fla. Feb. 22, 2017) ....................2, 8

*Mullane v. Cent. Hannover Bank & Trust Co.*,
339 U.S. 306 (1950) ....................11

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014)....................6

*Slaven v. BP Am., Inc.*,
190 F.R.D. 649 (C.D. Cal. 2000) ....................5

*Staton v. Boeing*,
327 F.3d 938 (9th Cir. 2003)....................6

**Statutes**

California's Unfair Competition Law ....................2

Texas Debt Collection Act ....................3

**Rules**

Fed. R. Civ. P. 23(e)(3) ....................7

Fed. R. Civ. P. 23 ....................11

Fed. R. Civ. P. 23(a)....................5

Fed. R. Civ. P. 23(b)(3)....................6, 7

Fed. R. Civ. P. 23(c)(2)(B)....................7

Fed. R. Civ. P. 23(e)....................2



ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**Other Authorities**

24 C.F.R. § 203.558 ........................................................................................................2, 6

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010)..........................................................................................2

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on December 20, 2018 at 2:00 p.m. in Courtroom 2 of the United States District Court for the Northern District of California, Oakland Division, Plaintiffs, on behalf of a proposed Settlement Class, will move for an order certifying the Settlement Class and granting final approval of the class action settlement with Wells Fargo.

The grounds for this motion are that the proposed class settlement is fair, reasonable, and adequate, as set forth in the accompanying memorandum of points and authorities; the Declaration of Adam L. Hoipkemier; the Declaration of Michael Ram; the Declaration of Samuel Strauss; the Declaration of the Hon. Daniel Weinstein (Ret.); the Declaration of Vana Fowler; the Declaration of Michael Peters; the Declaration of Amanda Sternberg regarding the notice program; the [Proposed] Order Granting Final Approval of Class Settlement; the [Proposed] Judgment; the argument and presentation of counsel at the hearing; and other matters that the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This Settlement arises from Wells Fargo's practices related to the collection of post-payment interest on FHA-insured mortgages. The Settlement provides for Class members to receive two rounds of direct mailed checks for a pro rata share of the $30 million settlement fund (after payment of fees, costs, and expenses) without requiring a claim form or other action. All told, the total payouts are expected to average $25.00 to $33.00 – an excellent result considering the legal challenges and lengthy delay otherwise sitting between the Class and a final judgment.

The Court preliminarily approved the proposed Settlement, D.E. 85, and notice has been disseminated to the Class as directed by the Court. The response to the Settlement has been overwhelmingly positive. Not one of the 1.12 million class members objected to the Settlement or to Class Counsel's fee application. Only 55 class members elected to opt-out – a miniscule .00005% of the class. This response reflects a remarkable level of support from Class members for the Settlement and favors final approval.

The risks of continued litigation also favor the proposed Settlement. If litigation had

continued, Plaintiffs would have faced the challenge of distinguishing the *Miller* decision denying certification of a litigation class asserting the same non-disclosure theory against Wells Fargo. *Miller v. Wells Fargo Bank, N.A.*, No. 1:16-cv-21145-UU, 2017 WL 698520 (S.D. Fla. Feb. 22, 2017) ("*Miller*"). Indeed, the Southern District of Iowa recently engaged in this analysis in approving a class settlement of post-payment interest claims against JP Morgan Chase. *Audino v. JP Morgan Chase, N.A*, Case 4:16-cv-00631-SMR-HCA at p. 20, 22 (S.D. Iowa, November 14, 2018) (analyzing *Miller* and finding "very real chance" class members could receive nothing).[1]

Finally, the notice program fully satisfies the standards of Rule 23(e) and due process. The Settlement Administrator directly mailed notice to the best-known address for all Settlement Class Members based on Wells Fargo's records and re-mailed undeliverable notices using the national change of address database. *E.g. Decohen v. Abbasi, LLC*, 299 F.R.D. 469, 479 (D. Md. 2014) ("Under the circumstances of this case, when all class members are known in advance, the Court finds that the method of direct mail notice to each class member's last known address—and a second notice if the first was returned as undeliverable—was the best practicable notice."). Out of 1.12 million mailed notices, only 3,588 were returned as undeliverable - a highly successful result. Sternberg Decl., ¶ 13; Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* (2010) at 3 (greater than 70% notice rate is "reasonable").

For all of these reasons, Plaintiffs respectfully request that the Court certify the Settlement Class and give final approval to the Settlement.

## II. BACKGROUND

### A. Brief Procedural History

Plaintiff Vana Fowler filed this action against Wells Fargo on March 9, 2017 in San Francisco County Superior Court alleging that Wells violated California's Unfair Competition Law by collecting post-payment interest in violation of the terms of the parties' contract and 24 C.F.R. § 203.558. Wells Fargo removed the case to this Court on April 14, 2017. Wells Fargo moved to dismiss, and the Court denied the motion on September 11, 2017.

[1] A copy of the *Audino* final approval order is attached as Exhibit A.



ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

Plaintiff Michael Peters, also represented by Class Counsel, filed similar claims against Wells Fargo in the Northern District of California asserting breach of contract and violation of the Texas Debt Collection Act. On January 12, 2018, Judge Tigar entered an order transferring the case to the Southern District of Texas.

After engaging in written discovery, Plaintiff Fowler and Wells Fargo attended mediation with the Hon. Daniel Weinstein. At the close of mediation, Judge Weinstein proposed a mediator's number of $30 million to settle nationwide claims, which both parties accepted in the following weeks. Over the following three months, the parties negotiated settlement terms and prepared settlement documents. The parties stipulated to an amended complaint for the purpose of settlement changing the cause of action to breach of contract and adding Plaintiff Peters as a party.

This litigation followed a ten-month investigation and two years of litigation over the same lending practices in the Southern District of Florida in *Miller v. Wells Fargo Bank, N.A.* In *Miller*, the parties engaged in extensive document and deposition discovery, briefed motions for class certification, summary judgment and motions in limine, and were on the verge of trial when the district court denied class certification. *Miller* settled on an individual basis shortly thereafter.

### B. The Terms of the Settlement

#### 1. Class definition, release, and notice

The Settlement Class is defined as the collective group of all persons nationwide who had an FHA-Insured Loan that originated between June 1, 1996 and January 20, 2015, where (i) Wells Fargo, its agent, or its predecessor was the mortgagee as of the date the total amount due on the FHA-Insured Loan was brought to zero, (ii) Wells Fargo collected Post-Payment Interest on the FHA-Insured Loan during the applicable Limitations Period, and (iii) the borrower made a prepayment inquiry, request for payoff figures, or tender of prepayment but did not receive a Payoff Statement containing the verbatim Post-Payment Interest disclosure language in Housing Handbook, 4330.1 REV-5 Appendix 8(c) or the verbatim language contained in the "Payoff Disclosure" referenced in the Housing Handbook 4000.1. Excluded from the Class are Wells Fargo, all officers, directors, and employees of Wells Fargo, and their legal representatives, heirs, or assigns, and any Judges to whom the Action is assigned, their staffs, and their immediate

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

families.

The scope of the claims released in the Settlement is narrowly defined and limited to claims arising from the collection of post-payment interest. Settlement Agreement, § 1.28 ("Released Claims" limited to allegations that were or could have been asserted "related to Post-Payment Interest on each Class Members' FHA-Insured Loan").

To notify the class, Garden City Group (now Epiq, following a merger) has directed a comprehensive notice campaign calling for direct mailed notice to every class member. *See generally* Steinberg Decl.

**2. Settlement benefits**

The Settlement creates a $30 million settlement fund to pay benefits, fees, and costs. Settlement Agreement § 3.2. After payment of costs of administration, any incentive awards, and any attorney's fees and expenses, the settlement fund will be allocated to Class members pro rata by dividing each Class member's post-payment interest by the total amount of post-payment interest collected from all Class members and multiplying the resulting percentage by the net settlement fund. *Id.*, § 5.2.1.

**3. Disbursement of funds**

The settlement administrator will mail a check to every class member that does not opt-out for a pro rata share of the net settlement fund. Settlement Agreement § 5.1. There is no claims process. The residual remaining after the first round of checks will be distributed by mailing a second round of checks to Class members that cash their first check. Settlement Agreement, §§ 5.5-5.6.

If, after 90 days, there are any uncashed checks remaining from the second distribution, only then do left over funds revert to Wells Fargo. Settlement Agreement, § 5.7. Given that Class members that cash the first check are likely to cash the second check, the reversion amount is projected to be very small. The parties agreed to a reversion rather than a third distribution on the assumption that the administrative costs of a third distribution would exceed or substantially erode the expected residual.

**4. Fees, costs, and service awards**

The parties agreed that Class Counsel would apply for a fee award of up to 25% of the common fund ($7.5 million) and for service awards of $7,500 to Plaintiff Vana Fowler, $5,000 to Plaintiff Michael Peters, and $500 each to Gerald Braxmeyer, Henry Yrlas, Russell Reece, Seth Hawk, Sandra McKenzie, and Dane Yetzer, to be paid out of any fee award to Class Counsel. The service awards are justified for the plaintiffs' contributions to the successful result in the litigation, as described in their declarations. *See generally* Fowler Decl.; Peters Decl. The Settlement also authorizes – and Class Counsel requests – reimbursement of up to $70,000 in litigation expenses (which is approximately $8,000 less than actual expenses). *Id.*

**5. Settlement Administrator**

The parties obtained bids from five class administrators (Epiq; KCC; GCG; JND; Rust). The parties then continued negotiations with three of the administrators (Epiq; GCG; KCC). The parties settled on GCG's revised proposal for $1.53 million, which was approximately $10,000 more than the lowest proposal. Subsequently, GCG merged with Epiq and Epiq is serving as class administrator pursuant to GCG proposal. Class Counsel engaged GCG as class administrator in one prior case over the last two years (*Dorado v. Bank of America*) and have not engaged Epiq in the last two years.

## III. THE SETTLEMENT CLASS SHOULD BE CERTIFIED

### A. The Class Satisfies Rule 23(a)

Rule 23(a) establishes four prerequisites for class certification: numerosity, commonality, typicality, and adequacy. See Fed. R. Civ. P. 23(a). Each is satisfied here.

Numerosity is satisfied because the Class contains more than 1.1 million members. *E.g. Slaven v. BP Am., Inc.*, 190 F.R.D. 649, 645 (C.D. Cal. 2000).

Commonality is satisfied. The Class members share common questions of law and fact based on Wells Fargo's common course of conduct, *i.e.* the collection of post-payment interest in breach of the contract provision governing the relationship between Wells Fargo and the Class.

Typicality is satisfied. Just as with other Class members, Wells Fargo charged Plaintiffs post-payment interest on their FHA-insured mortgage loans in violation of the terms of the uniform

HUD note and Section 203.558 as incorporated into the note. *See Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (determining typicality was satisfied because the named plaintiffs alleged "the same or [a] similar injury" as the rest of the class, an injury that was "a result of a course of conduct that is not unique to any of them" (quotation marks omitted)).

Adequacy is satisfied for two reasons. First, Plaintiffs do not "have any conflicts of interest with other class members." *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003). Plaintiffs' interests align with the Class as a whole: showing that Wells Fargo breached the HUD note by collecting post-payment interest without making the proper disclosure. Second, Plaintiffs and Class Counsel have prosecuted this action "vigorously on behalf of the Class." *Id.*

**B. The Class Satisfies Rule 23(b)(3)**

Certification is proper under Rule 23(b)(3) because [1] common questions of law and fact predominate over individual issues and [2] a class action is superior to other available methods for fairly and adjudicating the dispute.

Common factual questions predominate because Plaintiffs' claims arise from Wells Fargo's common course of conduct. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022-1023 (9th Cir. 1998). Common legal questions predominate because the law of breach of contract does not materially differ from state-to state as applied to Plaintiffs' claims. D.E. 80-3 (nationwide survey of elements of breach of contract) and D.E. 80-3 (nationwide survey of law of contractual incorporation by reference).

This case is distinguishable from *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*, 881 F.3d 679 (9th Cir. 2018), *rehearing en banc granted* July 27, 2018 ("*Hyundai*"),[2] because Plaintiff does not seek to apply California consumer protection law extra-territorially. Instead, the Settlement resolves claims applying the separate laws of breach of contract of the fifty states to the uniform HUD note between Wells Fargo and every Class member. "Courts routinely certify class actions regarding breaches of form contracts." *Ellsworth*, *supra*, 2014 U.S. Dist. LEXIS 81646, at *65; *see also In Re Med. Capital Secs. Litig.*, No. SAML 10-2145 DOC (RNBx),

[2] The Ninth Circuit's order granting rehearing *en banc* provides that the *Hyundai* panel opinion is not to be cited as precedent.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

2011 U.S. Dist. LEXIS 126659, 2011 WL 5067208, at *3 (C.D. Cal. Jul. 26, 2011) (collecting cases); *Dorado*, 2017 WL 5241042, at *6 ("[A]ny alleged 'individual issues relating to causation, injury and damage also disappear because the settlement's objective criteria provide for an objective scheme of compensation.'"); *cf. American Airlines v. Wolens*, 513 U.S. 219, 233 n.8 (1995) ("Because contract law is not at its core 'diverse, nonuniform, and confusing,' we see no large risk of nonuniform adjudication….").

Finally, a class action is superior to other modes of adjudication. The amount of individual class member's claims is at most a few hundred dollars. Thus, as a negative value suit, the "realistic alternative" to a class action is "zero individual suits." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

# IV. THE SETTLEMENT MERITS FINAL APPROVAL

A class action settlement cannot become binding unless the presiding court determines that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(3). In coming to that determination, the Ninth Circuit has identified a non-exhaustive list of factors to guide the final approval inquiry: [1] the strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement. *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016) (quoting *Hanlon*, 150 F.3d at 1026). In addition, when, as here, a proposed settlement class is certified under Rule 23(b)(3), the class must be given "the best notice that is practicable under the circumstances," and the substance of that notice must comply with Rule 23(c)(2)(B). The Settlement satisfies all of these requirements.

## A. The Strength of Plaintiffs' Case, Risk of Further Litigation, and Risks of Maintaining Class Action Status

The proposed Settlement appropriately balances the costs, risks, and delay of further litigation with the immediate benefits provided. Plaintiffs have a strong case that Wells Fargo breached Section 5 of the uniform HUD note by collecting post-payment interest without providing

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

the Class with a disclosure "in a form approved by the Commissioner." There is no dispute that Wells Fargo's payoff letter contains materially different language from Appendix 8(c) of the HUD handbook and the Payoff Procedure Disclosure form on HUD's website.

Nevertheless, Plaintiffs would have had to overcome significant risks at the class certification and summary judgment stages before getting to trial. As to class certification, the Class faced the risk that the Court would adopt the *Miller* reasoning that individual issues predominated over the common liability issues arising from the form contract. Principally, Wells Fargo would have relied on *Miller* to argue that causation could not be established on a class wide basis because some Class members may have chosen to close on a date other than the first business day of the month and absorb the additional interest cost. *Miller*, *supra*; *Audino*, *supra*, at 17-24. While Plaintiffs believe that they could overcome this defense, it is indicative of the hurdles the Class would face if this case were to proceed in litigation.

If Plaintiffs prevailed on the class certification, the Class may then have had to contend at summary judgment and trial with expert testimony by former HUD employees that, despite the plain language of the regulation and HUD handbook, HUD's practice was not to require use of a particular form of disclosure and that Wells Fargo's disclosure sufficiently conveyed the message that it was advantageous to close near the end of the month. While the Class would have vigorously contested the admissibility of this testimony, it faced the risk that the Court might find Wells Fargo substantially complied with the contract and regulation.

Absent settlement, the Class would face years of litigation involving a motion for class certification, dispositive motions, and, if successful at trial, the likelihood of multiple appeals. Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 U.S. Dist. LEXIS 49477, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). "Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."

*Ching v. Siemens Indus.*, Inc., No. 11-cv-04838-MEJ, 2014 U.S. Dist. LEXIS 89002, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (quotation omitted).

**B. The Amount Offered in Settlement is Reasonable**

The Settlement establishes a common fund of $30 million. The common fund will be distributed pro rata to the Class after payment of: (1) class notice and administration costs; and (2) attorney's fees and expenses.[3] The expected average check in the initial distribution is $19.50. The residual from uncashed checks will then be distributed in a second round of checks, for an estimated total recovery to participating class members of between $25.00 and $33.00. The settlement fund represents 11.3% of the total post-payment interest collected by Wells Fargo during the class period (approximately $264 million).

The question is whether the Settlement provides the Class with a reasonable amount of compensation, once the maximum recovery is discounted by the risks that Plaintiffs would face in continued litigation. *See Cotter v. Lyft, Inc.*, 176 F. Supp. 3d 930, 935 (N.D. Cal. 2016) ("In determining whether the proposed settlement falls within the range of reasonableness, perhaps the most important factor to consider is plaintiffs' expected recovery balanced against the value of the settlement offer." (citation and quotation marks omitted)).

As the following chart demonstrates, the settlement here is in line with approved post-payment interest settlements with other lenders:

| **Comparative Post-Payment Interest Settlements[4]** | | | |
|---|---|---|---|
| Defendant | Settlement Value | Pre/Post-*Miller* | Disclosure? |
| Wells Fargo (proposed) | 11% ($30 million) | Post | Yes; noncompliant |
| JP Morgan Chase | 13% ($11.22 million) | Post | Partially No |
| Bank of America | 19% ($29 million) | Pre | Partially No |

[3] Class Counsel request authorization to pay the proposed service awards out of any attorney's fees awarded by the Court so as not to reduce the common fund.

[4] EHDH was one of the firms representing the SunTrust and Bank of America classes; the JP Morgan Class was represented by Gibbs Law Group LLP, Paul LLP and Rouse Law PC.



ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

The proposed Settlement is most comparable to the recently approved settlement with JP Morgan Chase in *Audino*. As the chart reflects, the settlement values predictably decreased following the district court's denial of class certification in *Miller* and vary based on the substance of the lender's disclosure form. Plaintiffs submit the factors considered by the *Audino* court in approving the settlement with JP Morgan Chase are instructive. See Exhibit A at 17-24 (final approval order). Here, this settlement compares favorably to *Audino* because the absolute recovery is nearly three times as large and the JP Morgan Chase Class had a relatively stronger claim due to the *absence of a disclosure* to part of the class, compared to Wells Fargo's disclosure which was missing some language from the HUD-approved form.

**C. The Parties Have Reached Settlement at an Appropriate Stage**

Class Counsel were well advised of the relevant factual and legal considerations necessary to negotiate an informed settlement through the multi-year litigation with Wells Fargo in this case and *Miller*, as well as similar litigation with other financial institution defendants. D.E. 90-1, Hoipkemier Decl. ¶¶ 2-3, 14-18; D.E. 90-1, Hoipkemier Decl., Ex. 1. Prior to negotiating the settlement, Counsel engaged in a 10-month pre-suit investigation, reviewed more than 35,000 documents produced by Wells Fargo, took fact and expert depositions, and briefed class certification, dispositive motions and motions in limine. *Id.*; *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

**D. Experienced Counsel Favor the Settlement**

Class Counsel are capable and experienced in class actions and believe that the Settlement is in the best interests of the Class. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *In re Netflix Privacy Litig.*, No. 11-CV-00379-EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) (applying at preliminary approval a "presumption" of fairness to settlement that was "the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel"). This factor favors approval.

**E. Governmental Participation**

This factor is irrelevant because no governmental entity participated in this matter.

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**F. The Reaction of Class Members is Positive**

None of the more than 1.12 million class members have objected to the Settlement. Only 55 class members opted out. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043; *see also In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval."). This factor strongly favors final approval.

**G. Lack of Collusion**

"Before approving a class action settlement, the district court must reach a reasoned judgment that the proposed agreement is not the product of fraud or overreaching by, or collusion among, the negotiating parties." Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1290 (9th Cir. 1992). Where a settlement is the product of arms-length negotiations conducted by capable and experienced counsel, the court begins its analysis with a presumption that the settlement is fair and reasonable. See 4 Newberg § 11.41; In re Heritage Bond Litig., 2005 U.S. Dist. LEXIS 13555, at *32 (C.D. Cal. June 10, 2005); Ellis v. Naval Air Rework Facility, 87 F.R.D. 15, 18 (N.D. Cal. 1980). The Settlement is the product of arms-length negotiations between the parties and their counsel, was informed by Class Counsel's extensive discovery and investigation, and was negotiated with the assistance of an experienced mediator.

**V. DIRECT MAILED NOTICE TO THE CLASS SATISFIES RULE 23**

The direct notice program employed in connection with the Settlement was the best practicable under the circumstances, in accordance with Rule 23 and due process. Notice to the class must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hannover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). As detailed in the Declaration of Amanda Sternberg, the Notice Plan has satisfied this requirement by delivering mailed notice to more than 99% of the Class. *See generally* Sternberg Decl.

**CONCLUSION**

The Settlement, achieved after years of hard-fought litigation, is fair, reasonable, and adequate. Plaintiffs respectfully request that the Court certify the Settlement Class, grant final approval of the Settlement, and enter the proposed Judgment. A proposed stipulated order granting final approval is attached as Exhibit B and a proposed stipulated final judgment is attached as Exhibit C.

DATED: December 5, 2018

**EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC**

By: */s/ Adam L. Hoipkemier*
Adam Hoipkemier
Kevin Epps
1220 Langford Drive
Building 200-101
Watkinsville, GA 30677
Telephone: 706 508 4000
adam@ehdhlaw.com
kevin@ehdhlaw.com
(appearing *pro hac vice*)

**ROBINS KAPLAN LLP**

By: */s/ Michael F. Ram*__
Michael F.Ram
Susan Brown
2440 West El Camino Real
Mountain View, CA 94040
Telephone: 650 784 4040
mram@robinskaplan.com
sbrown@robinskaplan.com

**TURKE & STRAUSS LLP**

By: */s/ Samuel Strauss*
Samuel Strauss
613 Williamson Street
Suite 209
Madison, WI 57303
sam@turkstrauss.co
(appearing *pro hac vice)*

ROBINS KAPLAN LLP
ATTORNEYS AT LAW
MOUNTAIN VIEW

**CERTIFICATE OF SERVICE**

I certify that, on December 5, 2018, I caused this Notice of Motion and Motion for Final Approval of Class Action Settlement; Memorandum of Points and Authorities in Support Thereof to be filed using the CM/ECF system, which will provide electronic notification and service on the following counsel:

David Reidy
DReidy@mcguirewoods.com

K. Isaac deVyver
KdeVyver@mcguirewoods.com

Karla Johnson
KJohnson@mcguirewoods.com

Sara F. Holladay-Tobias
STobias@mcguirewoods.com

DATED: December 5, 2018

**EPPS, HOLLOWAY, DELOACH & HOIPKEMIER, LLC**

By: _/s/ Adam Hoipkemier_
Adam Hoipkemier (SBN 745811)

1220 Langford Drive
Building 200-101
Watkinsville, GA 30677
Telephone: 706 508 4000
Facsimile: 706 842 6750
adam@ehdhlaw.com

*Attorneys for Plaintiffs and the Settlement Class*