UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANA FOWLER,<br><br>    Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | Case No. 17-cv-02092-HSG<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND GRANTING IN PART AND DENYING IN PART MOTION FOR ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 90, 91 |

## I. INTRODUCTION

Pending before the Court are the motions for final approval of class action settlement and for attorneys' fees filed by Plaintiffs Vana Fowler and Michael Peters. Dkt. Nos. 90, 91. The Court held a final fairness hearing on the motion on December 20, 2018. For the reasons stated below, the Court GRANT the motion for approval, and GRANTS IN PART the motion for fees, costs and incentive awards.

## II. BACKGROUND

### A. Factual Allegations and Procedural History

Plaintiffs allege that Wells Fargo unlawfully and unfairly collected post-payment interest on mortgages insured by the Federal Housing Administration ("FHA")—part of the Department of Housing and Urban Development ("HUD")—by failing to provide proper notice to borrowers. *See* Dkt. No. 81 ("FAC").

Under HUD regulation 24 C.F.R. § 203.558, banks may collect interest after a borrower repays the full principal on his or her FHA-insured loan if the borrower's repayment is made after

the first of the month. *See* 24 C.F.R. § 203.558(c) (2014).[1] Accordingly, banks may collect interest from the date the loan is paid off through the end of the month. *Id.* However, the statute specifies that before banks may collect this post-payment interest, they must provide notice to borrowers with "a form approved by the [FHA] Commissioner." *Id.* Plaintiffs assert that these HUD regulations are also incorporated into the banks' promissory notes with borrowers. FAC ¶ 80.

Here, Plaintiffs allege that Defendant collected post-payment interest on their loans. *See* FAC ¶¶ 8–9, 85. Plaintiffs assert that Defendant did not provide them with the proper notice and instead used its own unauthorized form that "does not fairly disclose the terms under which [Defendant] can collect post-payment interest or properly explain how borrowers can avoid such charges." FAC ¶ 6. According to Plaintiffs, Defendant's form suggests that borrowers cannot avoid paying post-payment interest through the end of the month. *Id.* ¶ 70. Plaintiffs state that as a result, they were charged interest twice—both by Defendant and by their new lenders after refinancing. Plaintiffs seek any applicable damages on behalf of a class of nationwide borrowers. *Id.* ¶ 74, Relief Requested.

On June 28, 2018, Plaintiffs filed a motion for preliminary approval. Dkt. No. 80. The Court granted the motion for preliminary approval on August 22, 2018. Dkt. No. 85.

### B. Overview of the Proposed Settlement

Following extensive formal discovery and with the assistance of a mediator, the parties entered into a settlement agreement. Dkt. No. 91 at 3; Dkt. No. 80-1 ("SA"). The key terms are as follows:

<u>Class Definition</u>: The Class is defined as the nationwide group, excluding Wells Fargo employees and Judges and staff to whom this action is assigned, "who had an FHA Insured Loan that was originated beginning June 1, 1996 and ending January 20, 2015, where (i) Wells Fargo, its agent, or its predecessor was the mortgagee as of the date the total amount due on the FHA-

---

[1] Plaintiffs' proposed class period runs from June 1, 1996, through January 20, 2015. *See* FAC ¶ 74. Consequently, the earlier 2014 version of the statute, current through January 20, 2015, applies.

2

Insured Loan was brought to zero, (ii) Wells Fargo collected Post-Payment Interest on the FHA-Insured Loan during the applicable Limitations Period, and (iii) the borrower made a prepayment inquiry, request for payoff figures, or tender of prepayment but did not receive a Payoff Statement containing the verbatim Post-Payment Interest disclosure language in [the] Housing Handbook." SA ¶ 1.5.

Settlement Benefits: The Net Settlement Fund will consist of $30,000,000, minus the costs of settlement administration, incentive awards, and attorneys' fees and expenses. SA ¶¶ 1.36, 5.2.1. Each settlement class member will receive a refund of a percentage of the Net Settlement Fund proportional to the amount of post-payment interest collected in connection with that member's loan as compared to all other class members' post-payment interest. SA ¶ 5.2.1.

Release: All settlement class members will release:

> any and all claims, defenses, demands, objections, actions, causes of action, rights, offsets, setoffs, suits, damages, lawsuits, costs, relief for contempt, losses, attorneys' fees, expenses, or liabilities of any kind whatsoever, in law or in equity, for any relief whatsoever, including monetary, sanctions or damage for contempt, injunctive, or declaratory relief, rescission, general, compensatory, special, liquidated, indirect, incidental, consequential, or punitive damages, as well as any and all claims for treble damages, penalties, interest, attorneys' fees, costs, or expenses, whether a known or Unknown Claim, suspected or unsuspected, contingent or vested, accrued or not accrued, liquidated or unliquidated, matured or unmatured, that in any way concern, arise out of, or relate to allegations that were or could have been asserted in the Class Action Complaint related to Post-Payment Interest on each Class Member's FHA-Insured Loan. It is the intention of the Class Representatives to provide a general release of all Released Claims against the Releasees for claims related to Post-Payment Interest.

SA ¶ 1.28.

Class Notice: A third-party settlement administrator sent class notices via U.S. mail to each member of the class, using a class list provided by Defendant. SA ¶¶ 7.2, 7.3; Dkt. No. 88 at 1. The notice included the nature of the action, a summary of the settlement terms, and instructions on how to object to and opt out of the settlement, including relevant deadlines. SA ¶¶ 7.1–7.7, Exs. 1, 2.

Opt-Out Procedure: Any putative class member who does not wish to participate in the settlement must have signed and postmarked a written request for exclusion to the settlement

3

administrator no later than November 20, 2018. SA ¶¶ 11.1; 1.22; Dkt. No. 88 at 1.

<u>Incentive Award</u>: Pursuant to the settlement agreement, Plaintiff Fowler now applies for an incentive award of $7,500 and Plaintiff Peters applies for an incentive award of $5,000. Dkt. No. 90 at 1; SA ¶ 15.3. Six class members who prepared but did not file claims are each also seeking a $500 incentive award. Dkt. No. 90 at 1.

<u>Attorneys' Fees and Costs</u>: Pursuant to the settlement agreement, Plaintiffs have filed an application for attorneys' fees in the amount of $7.5 million (25% of the settlement fund), and litigation expenses of $70,000. Dkt. No. 90 at 1–2; SA ¶¶ 15.1–15.2.

## III. ANALYSIS

### A. Final Settlement Approval

#### i. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that would affect these requirements have changed since the Court preliminarily approved the class on August 22, 2018, this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See* Dkt. No 85 at 4–8.

#### ii. The Settlement

"The claims, issues, or defenses of a certified class may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *Officers for Justice v. Civil Serv. Comm'n of the City and Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982) ("The district court's role in evaluating a proposed settlement must be tailored to fulfill the objectives outlined above. In other words, the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties . . . ."). To assess whether a proposed settlement comports with Rule 23(e), the Court "may consider some or all" of the

following factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 963 (9th Cir. 2009); *see Hanlon*, 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor" is case specific. *Officers for Justice*, 688 F.2d at 625.

In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that the proposed settlement is fair, adequate, and reasonable, and that class members received adequate notice.

### a. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. Fed. R. Civ. P. 23(c)(2)(B). Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. May 27, 2010) (noting that "due process requires reasonable effort to inform affected class members through individual notice, not receipt of individual notice").

The Court finds that the notice plan previously approved by the Court, Dkt. No. 85 at 11–12, was implemented and complies with Rule 23(c)(2)(B). As outlined in the settlement agreement, Defendant provided the third-party settlement administrator, Garden City Group, LLC ("GCG") with names and other identifying information for putative class members. *See* SA ¶ 6.4; Dkt. No. 91-4 ¶ 8. Prior to sending physical notice, GCG ran mailing address records through the

5

National Change of Address Database. Dkt. No. 91-4 ¶ 9. On October 5, 2018, GCG sent physical notice, *id.* Ex. C, to 1,112,747 potential class members. *Id.* ¶ 10. As of November 13, 2018, the Postal Service had returned 11,022 short-form notices as undeliverable. *Id.* ¶ 12. After conducting skip trace searches, 7,434 short-form notices were re-mailed to updated addresses. *Id.* On October 5, 2018, GCG additionally established a settlement website, which contains a summary of the settlement, copies of certain settlement documents, a long-form notice, and contact information for the settlement administrator. *Id.* ¶ 14. As of October 17, 2018, 55 requests to opt out have been received, and no class member has objected to the settlement.[2] Dkt. No. 91 at 11. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

### b. Fairness, Adequacy, and Reasonableness

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

#### 1. Strength of Plaintiff's Case, Litigation Risks, and Risks of Maintaining Class Action Status

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Courts "may presume that through negotiation, the Parties, counsel, and mediator arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery." *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365-CW, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010). Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement. *Rodriguez*, 563 F.3d at 966. "Generally, unless the settlement is clearly

---

[2] Two individuals, Sergio and MA Norma Rodriguez, filed an objection on December 20, 2018, the same day as the final approval motion hearing. Dkt. No. 92. These individuals did not appear at the hearing, and the Court accepts the parties' representation made at the hearing that both Sergio and MA Norma Rodriguez had opted out prior to their filed objection. *See also* Dkt. No. 91-4, Ex. D (list of opt-outs including Sergio and MA Norma Rodriguez). A putative class member who opts out of the settlement does not have standing to object to it. *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *8 (N.D. Cal. Jan. 26, 2007) ("Although Bavishi has submitted objections to the settlement, he also has opted out. Consequently, as Bavishi is no longer a class member, he has no standing to object."), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (internal citation omitted).

inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. Jun. 27, 2014) (quotation omitted).

This action reached settlement before the Court had an opportunity to consider the merits of the claims. But Plaintiff would face both factual and legal hurdles were the litigation to proceed. Plaintiff identifies challenges to establishing causation on a class-wide basis at the class certification stage. *See* Dkt. No. 91 at 8; *Miller v. Wells Fargo Bank, N.A.*, No. 1:16-CV-21145-UU, 2017 WL 698520, at *17 (S.D. Fla. Feb. 22, 2017) (denying motion for class certification brought against Wells Fargo on similar facts for failure to demonstrate predominance). With respect to maintaining class action status, the size of the putative class, which includes over 1,000,000 individuals, itself presents complex issues potentially undermining certification.

Considering Defendant's apparent willingness to defend against this action and the uncertain state of the law, Plaintiff was not guaranteed a favorable result. In reaching a settlement, however, Plaintiff ensured a favorable recovery for the class. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors support approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement over protracted litigation).

### 2. Settlement Amount

The amount offered in the settlement is another factor that weighs in favor of approval. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the $30,000,000 settlement amount falls "within the range of reasonableness" in view of litigation risks and costs. Participating class members will receive an estimated average initial distribution of $19.50 after deductions for attorneys' fees and costs and settlement administration costs. *See* Dkt. No. 91 at 9. The residual from uncashed checks will then be distributed in a second round of checks to participating class members. Plaintiffs estimate that participating members' total recovery will be between $25 and $33. *Id.* The settlement fund represents 11.3% of the total post-payment interest collected by Wells Fargo during the class period. *Id.* The amount is commensurate with recoveries approved by other district courts. Dkt. No. 91 at 9-10

7

(listing values of settlements approved in similar cases against other lenders); *see also, e.g., In re Newbridge Networks Sec. Litig.*, No. CIV. A. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) ("an agreement that secures roughly six to twelve percent of a potential trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness."). The Ninth Circuit has cautioned that just because a settlement could have been better "does not mean the settlement presented was not fair, reasonable or adequate." *Hanlon*, 150 F.3d at 1027 ("Settlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion.").

### 3. Extent of Discovery Completed and Stage of Proceedings

Class counsel had sufficient information to make an informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Plaintiff pursued settlement only after engaging in a significant pre-suit investigation. Dkt. No. 91 at 10. The Court finds that the parties have sufficiently analyzed materials that enabled them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### 4. Experience and Views of Counsel

The Court next considers the experience and views of counsel, and finds that this factor also weighs in favor of approval. "[P]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez*, 563 F.3d at 967 (quotation omitted). Accordingly, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008). The Court has previously evaluated class counsel's qualifications and experience and concluded that counsel is qualified to represent the classes' interests in this action. *See* Dkt. No. 85 at 5–6. As discussed, class counsel initiated settlement discussions only after assessing the risks of continuing the litigation. The Court recognizes, however, that courts have diverged on the weight to assign counsel's opinions. *Compare Carter v. Anderson Merch.*, LP, 2010 WL 1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight."), *with Chun-Hoon*, 716 F. Supp. 2d at 852

("[T]his court is reluctant to put much stock in counsel's pronouncements. . . ."). This factor's impact is therefore modest, but favors approval.

### 5. Reaction of Class Members

The reaction of class members supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class notice, which was served on each class member in accordance with the methods approved by the Court, advised the class of the requirements regarding objections and exclusions. *See* Dkt. No. 91-4 ¶¶ 5–15, Exs. A–D. The deadline to object or request exclusion was November 20, 2018. Dkt. No. 91-4 ¶ 16. 55 class members opted out, and no putative class member who had not already opted out objected to the settlement. *Id.*; Dkt. No. 91 at 11; *see also* footnote 2 *infra*. The absence of objections and the low number of opt-outs suggest support among the class members and weigh in favor of approval. *See, e.g.*, *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement where 45 of approximately 90,000 class members objected).

\* \* \*

After considering and weighing the above factors, the Court finds that the settlement agreement is fair, adequate, and reasonable, and that the settlement class members received adequate notice. Accordingly, Plaintiff's motion for final approval of class action settlement is **GRANTED**.

### B. Motion for Attorneys' Fees and Costs

Class counsel asks the Court to approve an award of $7,500,000 in attorneys' fees and $70,000 in costs. Dkt. No. 90 at 1. Class counsel also seeks a $7,500 incentive award for Named Plaintiff Vana Fowler, $5,000 to Plaintiff Michael Peters, and $500 each to six class members with prepared but unfiled claims for their assistance in this case. *Id.*

9

### i. Attorneys' Fees

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). The Court has discretion in a common fund case to choose either (1) the lodestar method or (2) the percentage-of-the-fund when calculating reasonable attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

Under the percentage-of-recovery method, twenty-five percent of a common fund is the benchmark for attorneys' fees awards. *See*, *e.g.*, *In re Bluetooth*, 654 F.3d at 942 ("[C]ourts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."); *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).

Under the lodestar method, a "lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 965 (9th Cir. 2003)). Whether the Court awards the benchmark amount or some other rate, the award must be supported "by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.

"[T]he established standard when determining a reasonable hourly rate is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quotation omitted). Generally, "the relevant community is the forum in which the district court sits." *Id*. (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). "In addition to affidavits from the fee applicant, other evidence of prevailing market rates may include affidavits from other area attorneys or examples of rates awarded to counsel in previous cases." *Schuchardt*

*v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 687 (N.D. Cal. 2016).

Although "the choice between lodestar and percentage calculation depends on the circumstances, . . . either method may . . . have its place in determining what would be reasonable compensation for creating a common fund." *Six Mexican Workers*, 904 F.2d at 1311 (internal quotation marks omitted). To guard against an unreasonable result, the Ninth Circuit has encouraged district courts to cross-check any calculations done in one method against those of another method. *Vizcaino*, 290 F.3d at 1050–51.

Class counsel here seeks $7,500,000 in fees, or one quarter (25%) of the settlement amount. *See* Dkt. No. 90 at 1. That matches the benchmark for a reasonable fee award under the percentage-of-recovery method. *See In re Bluetooth*, 654 F.3d at 942 (typical 25% benchmark). The fee amount requested is significantly greater than class counsel's fees would be if calculated using the lodestar method. In calculating its lodestar, class counsel contends that it expended a combined 4,072.5 hours. Dkt. No. 90 at 9. With respect to hourly rates, the eight attorneys request rates between $300 per hour and $850 per hour. *Id.* According to class counsel, this yields a lodestar of $2,167,826. *Id.* Counsel suggests that a multiplier of approximately 3.46 times the lodestar is appropriate in this case. *Id.*

Having reviewed class counsel's qualifications and supporting documents, the Court finds that the billing rates used are reasonable and generally in line with rates in this District for personnel of comparable experience, skill, and reputation. *See, e.g.*, *In re NCAA Ath. Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-md-2541-CW, 2017 U.S. Dist. LEXIS 201108, at *3, 21–22 (N.D. Cal. Dec. 6, 2017) (approving $41,732,889 in fees, representing 20% of the settlement fund and a 3.66 multiplier); *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *1–2 (N.D. Cal. June 30, 2011) (approving $3,125,000 in fees, representing 25% of the settlement fund and a 4.3 multiplier, and collecting cases).

Having carefully reviewed the documentation provided by class counsel, the Court finds reasonable the number of hours expended in this action given the length of the case and its procedural posture. The Court finds that class counsel's requested fees are reasonable in light of the results achieved for the class and finds that a benchmark award of 25% of the settlement fund

11

is appropriate. The Court accordingly GRANTS class counsel's motion for attorneys' fees in the amount of $7,500,000.

### ii. Attorneys' Costs

Class counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quotation omitted). Class counsel seeks reimbursement of $70,000 in litigation costs. Dkt. No. 90 at 1. Class counsel has provided itemized documentation demonstrating that the amount requested covers expenses of filing, document delivery, and travel. *See* Dkt. No. 90-1, Ex. 4. Defendant does not oppose class counsel's request. The Court finds the amount requested by counsel reasonably incurred, and the Court GRANTS in full the motion for costs in the amount of $70,000.

### iii. Incentive Awards

Class counsel requests an incentive award of $7,500 to Plaintiff Vana Fowler, $5,000 to Plaintiff Michael Peters, and $500 each to six class members with prepared but unfiled claims for their time and service. Dkt. No. 90 at 1. Here, Plaintiffs' counsel requests that the service awards be paid out of any attorneys' fees awarded by the Court, so as not to reduce the common fund. Dkt. No. 90 at 12. "[N]amed plaintiffs . . . are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases."). They are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Nevertheless, the Ninth Circuit has cautioned that "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives . . . ." *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013). This is particularly true where "the proposed service fees greatly exceed the payments to absent class members." *Id.* at 1165 (quotation omitted). The district court must evaluate an incentive award using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . [and] the amount of time and effort the plaintiff expended in pursuing the litigation . . . ." *Staton*, 327 F.3d

12

1  at 977 (quotation omitted).

2  Courts in this district have recognized a $5,000 incentive award as "presumptively reasonable." *Smith v. Am. Greetings Corp.*, No. 14-CV-02577-JST, 2016 WL 362395, at *10 (N.D. Cal. Jan. 29, 2016); *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (observing that "as a general matter, $5,000 is a reasonable amount"). The $12,500 total in incentive awards requested for Named Plaintiffs is also significantly less than the approximately 1% of the total settlement awarded by some courts. *See Sandoval v. Tharaldson Empl. Mgmt., Inc.*, No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *10 (C.D. Cal. Jun. 15, 2010) (finding a $7,500 award, or 1% of the settlement fund, fair and reasonable).

Both Named Plaintiffs participated in the litigation by assisting counsel in obtaining loan documents, and reviewing the complaint as well as relevant motions. Dkt. Nos. 90-4 and 90-5. Named Plaintiff Fowler also assisted her attorneys in responding to discovery. Dkt. No. 90-4 at ¶ 8. Ms. Fowler flew to San Francisco and stayed overnight to attend the mediation in the case. *Id.* Ms. Fowler participated in the mediation as the settlement negotiations took place, and had follow-up calls and emails with counsel. *Id.* at ¶¶ 6, 8. Ms. Fowler estimates that she spent 40 to 50 hours on the case. *Id.* at ¶ 8.

Named Plaintiff Peters searched for and produced relevant documents regarding the case. Dkt. No. 90-5 at ¶ 6. He also communicated with counsel before and after the mediation, and discussed the settlement agreement and exhibits with counsel. *Id.* at ¶ 7. Mr. Peters estimates that he spent approximately 20 hours on the case. *Id.* at ¶ 9.

Gerald Braxmeyer, Henry Yrlas, Russell Reece, Seth Hawk, Sandra McKenzie, and Dane Yetzer are class members who assisted Class Counsel in obtaining their loan records and in building additional cases against Wells Fargo as part of a multi-state litigation strategy, although the Settlement was reached before their claims were filed. Dkt. No. 90 at 13. These class members spent an estimated five hours each assisting counsel on this case. *Id.*

Given the amounts requested, and noting that the incentive awards will be apportioned from the attorneys' fees, the Court finds the amounts requested by the Named Plaintiffs to be fair

13

and reasonable. The Court therefore GRANTS Plaintiffs' request for an incentive award of $7,500 to Plaintiff Vana Fowler, and $5,000 to Plaintiff Michael Peters.

The Court declines to award the requested $500 each to non-Named Plaintiff class members Gerald Braxmeyer, Henry Yrlas, Russell Reece, Seth Hawk, Sandra McKenzie, and Dane Yetzer. The Court has found the settlement to be a good and fair deal for the class members generally, and concludes that it is fair for these class members as well. The Court does not believe it appropriate to award more than fifteen times the maximum recovery projected for other class members to these individuals based on their contributions to claims that were never filed. The Court is of the view that incentive awards should be reserved for named plaintiffs, to avoid creating tiers of differently-treated class members. *See, e.g., Hendricks v. StarKist Co.*, 2016 WL 5462423 at * 14 (N.D. Cal. Sept. 29, 2016) (denying request for $1,000 incentive payments for eight "interested party" class members who filed motion to intervene, assisted with preparation of class action complaint that was never filed, and were on standby to represent statewide classes if necessary), *aff'd*, *Hendricks v. Ference*, 2018 WL 5115482 (9th Cir. October 19, 2018).

//
//
//
//
//
//
//
//
//
//
//
//
//
//

## IV. CONCLUSION

For the foregoing reasons it is hereby ordered that:

a. Plaintiff's Motion for Final Approval of Class Action Settlement is hereby **GRANTED**, and Plaintiff's Motion for an Award of Attorneys' Fees, Reimbursement of Costs to Class Counsel, and Incentive Award is hereby **GRANTED IN PART** and **DENIED IN PART**.

b. The Court approves the settlement amount of $1,300,000 including payments of costs in the amount of $70,000; incentive awards of $7,500 to Plaintiff Vana Fowler, and $5,000 to Plaintiff Michael Peters; and attorneys' fees in the amount of $7,500,000 (less the incentive awards total).

The parties and settlement administrator are directed to implement this Final Order and the settlement agreement in accordance with the terms of the settlement agreement. The parties are directed to submit a joint proposed judgment by February 1, 2019.

**IT IS SO ORDERED.**

Dated: 1/25/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge